THE PEOPLE ex rel. WILLIAM W. ARMSTRONG, Relator, *v.* JOSEPH M. QUIGLEY, as Chief of Police of the City of Rochester, N. Y., Respondent.

(County Court, Monroe County, January, 1912.)

Disorderly conduct — What constitutes — Offense.
Habeas corpus — Disorderly person — Custody of children — Jurisdiction of committing magistrate.

> Where in case of voluntary separation the relator consented that his minor children should return with their mother to the city of B to live and agreed to pay her a certain sum per week for her and the children's support, but ceased to pay the same upon her refusal to return to his home in another city, he abandons them at the city of B.

Where, upon a verified complaint made to the city judge of B charging the relator with being a disorderly person within the meaning of section 899(1) of the Code of Criminal Procedure in that he had abandoned his minor children, he was arrested upon a warrant sufficient upon its face, issued by said city judge, the question of relator's guilt or innocence of the offense charged cannot be determined on habeas corpus and he must be remanded to custody.

Proceedings upon return to a writ of habeas corpus.

James Mann, Assistant District Attorney for defendant.

William W. Armstrong, for prisoner.

Barhite, J.   The relator seeks, by virtue of a writ of habeas corpus, to secure the release of his client who was arrested under a warrant charging him with being a disorderly person within the intent and meaning of subdivision 1 of section 899 of the Code of Criminal Procedure.   This warrant was issued by the city judge of the city of Binghamton upon a verified complaint made to him.

The point is made that the complaint does not contain sufficient and proper allegations to authorize the issuance of a warrant; but it does state the time, the place and the offense charged and the particular act which constitutes the offense, viz. that the person named had actually abandoned his two lawful children, who were minors, and had left them in danger of becoming a burden upon the public, and had neglected to provide for them.

It is true that the complaint follows closely the words of the statute; but, under the general rule governing accusations in criminal or *quasi* criminal proceedings, this, as a matter of pleading, is sufficient.   People ex rel. Van Riper v. New York Catholic Protectory, 106 N. Y. 604, 610.

No claim is made that the judicial officer who issued the warrant did not have jurisdiction to act in matters of this character.   See Code Crim. Pro., § 900.

The warrant is sufficient upon its face to authorize the arrest of the person named.   It is not necessary for the war-

rant to set up the circumstances of the offense.  People v. Upton, 55 Hun, 612.

The prisoner makes answer to the return and sets up certain allegations which he claims show facts which entitle him to his discharge.  The defendant demurs to the answer and thus, by his pleading, admits the statements in the answer to be true.

Upon the record thus made, counsel for the prisoner urges, with great ability and much citation of authority, that the whole question of guilt or innocence is open and that I have the power to determine upon the merits the issues in the case.  If this is so, then any person charged with crime has only to call to his aid this ancient writ and by its power compel the courts, without the formality of a trial or the aid of a jury, to pass upon all the questions involved in the charge against him.

The history of the writ of habeas corpus has been written so many times, and discussion of the exigencies it is intended to meet and the purposes which it can serve have so often been had, that a further recital is unnecessary.  It may be said, however, that in everything that has been written by judicial pen, while the efficiency of the writ has been steadily maintained, there has been an evident purpose to restrict the writ to its legitimate function.  When so much has been written, it would be strange if here and there an inaccurate expression of ideas should not be found.

The object of the writ of habeas corpus is not to determine whether a person has committed a crime, but whether he is illegally imprisoned or restrained of his liberty.  To determine this latter question may involve not only an examination of the record, but some facts outside the record.

In People ex rel. Pickard v. Sheriff, 11 Civ. Pro. 172, it was held that, when a person was imprisoned by virtue of a bench warrant, regular and fair upon its face, issued upon an indictment charging him with forgery, it was competent to go beyond the warrant and the indictment and ascertain whether the procedure upon which they were based was void.

In People v. Finn, 57 Misc. Rep. 659, the evidence upon

which the relator was held was by consent considered as part of the return, and the court, upon an examination of the evidence, held that the acts of which complaint was made did not constitute a crime and that, therefore, the committing magistrate had no jurisdiction.

In People ex rel. Frey v. Warden, 100 N. Y. 20, it is held that the weight of authority in this State is against the proposition that the recital of jurisdictional facts in judgments of courts of general jurisdiction, when attacked collaterally, is conclusive evidence of their existence, but that such recitals are simply *prima facie* evidence of the facts recited, and that, with reference to courts of limited and inferior jurisdiction, their judgments are open to impeachment by extrinsic evidence showing want of jurisdiction whenever they are sought to be used as a defense or by way of justification.

It is further held in the same case that, when a court has jurisdiction of the subject-matter and has acquired jurisdiction of the person by proper process, it is competent to try all issues, and its decision can only be reviewed by appeal.

In People ex rel. Tweed v. Liscomb, 60 N. Y. 559, it is held: "As well at common law as under the statutes of this State, if the party is detained on process, the existence and validity of the process are the only facts in issue, and the right to inquire into the validity of the process is coextensive with that which is allowed in an action for false imprisonment. If the process is valid on its face, it will be deemed *prima facie* legal, and the prisoner must assume the burthen of impeaching its validity by showing a want of jurisdiction. Error, irregularity, or want of form, is no objection; nor is any defect which may be amended or remedied by the court from which it issues. If there was no legal power to render the judgment or decree, or issue the process, there was no competent court, and consequently no judgment or process."

And again: "Upon principle as well as upon authority, the court or magistrate having jurisdiction of the writ of habeas corpus must have the right, in order to give effect

to the writ, to inquire into the jurisdiction of the court to give the judgment or decree, or issue the process by which the person is deprived of his liberty. In so doing he but inquires whether he is deprived of his liberty ' by due process of law,' or the judgment of a court of competent jurisdiction."

And again: " The court had jurisdiction of the person of the accused, and of criminal offenses committed within the county of New York, and necessarily had jurisdiction to pass upon the form and sufficiency of the indictment and the order and course of the trial, and decide every question that arose in its progress, and whether the determinations of the court, upon any or all of the questions, were right or wrong, did not affect the jurisdiction. In other words, the court had jurisdiction to make wrong, as well as right, decisions, in all the stages of the prosecution, and whether those made were right or wrong cannot be raised on habeas corpus."

Without multiplying quotations it is clearly established that it is the province of a writ of habeas corpus to bring up for determination the question whether the person has been deprived of his liberty without due process of law, and not to determine the question of irregularity in the proceedings which do not raise the question of jurisdiction.

In the light of the decisions, does it appear that the city judge of Binghamton has jurisdiction to determine the guilt or innocence of the prisoner? We have noted above that the jurisdiction of that officer to issue process in matters of abandonment is conceded and that the process by which the prisoner is held shows no lack of jurisdiction. Then do the facts set forth in the affidavit of the prisoner show that he has committed no crime? It should be noticed that the charge is not that the prisoner has abandoned his wife, but that he has abandoned his minor children.

It appears from his affidavit, briefly stated, that he has been for several years a resident of the city of Rochester; that differences arose between his wife and himself and they voluntarily separated, she going with the children to the city of Binghamton, he agreeing to pay her a certain

sum per week for her and the children's support; that he has repeatedly urged the wife, with the children, to return to his home where he is willing and able to provide for them; that upon her refusal he ceased to pay the agreed amount; that the children are of tender age, and that it would be neither wise nor safe for their best interests to take them from their mother.

The facts stated will undoubtedly release him from his obligation to support his wife. If the husband has provided a proper home for the wife, she must stay in that home or forfeit her right to support by him. With the children it is different. The father can compel them to return to his home, if that is for their best interests. If the wife voluntarily separates from the husband, taking with her their minor children, and the father in good faith desires to support and care for the children, he may, by judicial proceeding, have the question as to where the children shall live and who shall provide for their support legally determined; and his compliance with the order made would undoubtedly protect him from further annoyance. Dom. Rel. Law, § 70.

The husband consented that the children should return with their mother to the city of Binghamton and live at that place. When he ceased to pay the weekly amount which he had agreed to pay, he abandoned them at that place; and it is the interest of the municipality where they are living that it shall not be compelled to assume the obligations of the father. People v. Meyer, 12 Misc. Rep. 613.

I have written not with the intention of guiding the magistrate in his disposition of the case, nor with the intention of laying down any rules which should influence his determination, either upon the facts or the law, but simply for the purpose of passing upon the questions raised in this proceeding.

The writ of habeas corpus must be dismissed and the prisoner remanded to the custody of the chief of police of the city of Rochester.

An order to that effect may be entered.

Writ dismissed.