## WUICHET v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. November 13, 1925.)

No. 4339.

**1. Criminal law ⟨⟨⟩⟩312—Intent implied from established facts.**

Intent as an element of an offense may be implied from established facts.

**2. Post office ⟨⟨⟩⟩49—Intent to defraud purchasers of stock held inferable from proven facts.**

Intent to defraud purchasers of stock by admitted use of the mails in misrepresenting financial condition of company *held* inferable from facts in proof.

**3. Post office ⟨⟨⟩⟩49—Prior income tax returns of company held admissible in prosecution for use of mails to defraud purchasers of stock.**

Income tax returns of company and subsidiaries for prior years *held* admissions, as bearing on their financial condition, on prosecution of president of company and director of subsidiaries for use of mails to defraud purchasers of stock.

**4. Indictment and information ⟨⟨⟩⟩140(2)—Defendant must show he was prejudiced by irregularity in filling box from which grand jury drawn.**

For any irregularity, under Judicial Code, § 275 (Comp. St. § 1252), in excluding the names of women from the box from which grand jury was drawn, though under state law women were qualified to serve on state court juries, no implication of injury arising therefrom, defendant, to have indictment quashed, must show that injury or prejudice resulted to him from the irregularity.

**5. Criminal law ⟨⟨⟩⟩1043(I)—Request to elaborate a feature of charge held too indefinite to bring its rejection under review.**

Request, at conclusion of charge, for court to elaborate it with respect to defendant's good faith, not indicating to what extent the elaboration should go, was too indefinite to bring its rejection under review.

**6. Criminal law ⟨⟨⟩⟩829(I)—Charge fairly presenting law applicable, and clearly bringing out defendant's theory, need not be elaborated.**

There is no error in declining to elaborate the charge in a certain respect; it fairly presenting the law applicable to the evidence, and clearly bringing out the theory of defendant.

**7. Post office ⟨⟨⟩⟩49—Belief in ultimate success of corporation considered only on belief of truth of representations as to financial condition.**

Belief of defendant, charged with use of mails to defraud by sending misrepresentations of financial condition of corporation to prospective purchasers of its stock, that the corporation would ultimately be successful, was not a question for jury's consideration, beyond its bearing on the purpose of the scheme and his belief in the truth of the representations.

8 F.(2d)—36

In Error to the District Court of the United States for the Southern District of Ohio; Smith Hickenlooper, Judge.

Edward Wuichet was convicted of using the mails in furtherance of a scheme to defraud, and brings error. Affirmed.

Lee Warren James, of Dayton, Ohio (Joseph Bradford Coolidge, of Dayton Ohio, on the brief), for plaintiff in error.

H. E. Mau, U. S. Atty., of Cincinnati, Ohio (Harry A. Abrams, Asst. U. S. Atty., of Cincinnati, Ohio, on the brief), for the United States.

Before DONAHUE and MOORMAN, Circuit Judges, and SESSIONS, District Judge.

MOORMAN, Circuit Judge. Wuichet and others were indicted under section 215 of the Penal Code (Comp. St. § 10385), charged in numerous counts with misuse of the mails in furtherance of a scheme to defraud. They were also indicted for a conspiracy to violate section 215. The cases were consolidated and some of the defendants dismissed, but others entered pleas of guilty, and Wuichet pleading not guilty was tried and convicted. In prosecuting this writ he contends, first, that the trial court erred in refusing to sustain his motion for a directed verdict, submitted at the conclusion of the government's evidence.

The alleged fraudulent scheme with which defendants were charged grew out of a stock-selling program inaugurated by the American Finance Company. That company, of which Wuichet was president, was engaged mainly in lending money on automobiles. It occupied offices with the American Finance & Investment Company, a corporation engaged in a similar business, of which Wuichet was a director. In November of 1921 the Finance Company absorbed the Investment Company, which then held bills receivable and other obligations of several subsidiary companies engaged in selling automobiles. These were controlled by the Investment Company. Wuichet was a director in each of them. After the Investment Company was taken over, there was entered upon the books of the Finance Company as a "note receivable" an item of $250,000, which in fact was a note of the Investment Company payable to the Finance Company only in the event that the former company re-engaged in business as a competitor of the latter. Another item similarly designated on the books of the Finance Company was a note for $95,450 which was executed by

J. M. Dunwoodie in consideration of the transfer to him of the capital stock of two of the subsidiaries. But this note was to be paid out of future dividends from the stock of those companies, and not otherwise. Both companies were practically defunct, and their stock was of little, if any, value. Thereafter the Finance Company, through its officers, sold stock of the company amounting to more than $100,000. These sales were made by personal solicitations, after sending to prospective purchasers through the mails financial statements, pamphlets, and letters misrepresenting the financial condition of the company, the value of its stock, its past and prospective earnings, and the nature of its assets. Many of these statements and letters were signed by Wuichet, who caused them to be mailed. They were grossly misleading. The financial statements listed at their face value as notes receivable the two items referred to, neither of which could truthfully be so classified, and both of which were valueless. One of these statements showed a company surplus of almost $100,000, whereas there was really a deficit of nearly four times that amount.

[1, 2] It is admitted that defendant used the mails in misrepresenting the financial condition of the company, but it is insisted for him that there was no evidence of any purpose on his part to defraud the purchasers of the stock or fraudulently to obtain money from them. We shall not review the facts relied on in support of this contention, or weigh them in connection with other facts of different import, and, as we view them, more compelling effect. It is enough to say that the evidence as a whole justified the finding of an underlying intent to defraud. That this element of an offense may be implied from established facts is beyond dispute. McDonald v. United States (6 C. C. A.) 241 F. 793, 154 C. C. A. 495. The proof here is that defendant was a man of considerable experience in financial matters, and his associations and connection with these companies were shown to be so intimate that it is difficult to believe he was not fully informed as to their finances. His attention was called to the impropriety of sending some of the letters containing misrepresentations, notwithstanding which he signed and caused them to be sent, knowing doubtless, as indeed was true, that the representations made by one of his financial standing would facilitate the sale of the stock. The undisputed facts, with these circumstances, admit, we think, of no other

reasonable inference than a fraudulent intent.

[3] Nor was error committed in admitting in evidence copies of the income tax returns of the Investment Company and certain of its subsidiaries for the years 1920 and 1921, and the Finance Company for the years 1921 and 1922. Defendant was president of the Finance Company and signed its return. He was a director of the other companies. The stability of the Finance Company was in a substantial degree dependent upon the previous earnings and the financial condition of the Investment Company and its subsidiaries. The jury was instructed to consider the returns of these companies merely as evidence of what they purported to show. They contained facts bearing directly on the earnings and financial condition of the Finance Company, and necessarily, therefore, on the value of its capital stock. To this extent, and within the limitations fixed by the court, they were clearly competent.

[4] It is further contended that the motions to quash the indictments should have been sustained. They were based on the ground that the grand jury was illegally constituted, in that it was drawn from a box that did not contain the names of women. Section 275 of the Judicial Code (Comp. St. § 1252) provides that jurors serving in the courts of the United States, in each state respectively, "shall have the same qualifications" as jurors of the highest court of law in such state. Under the law of Ohio women are qualified to serve on juries in the state court. Section 275 is construed by counsel for defendant as requiring the jury commissioner and clerk of the District Court to select jurors from all classes within the district qualified under the state law to serve, whereas the requirement is that the jurors selected shall have the "same qualifications" as those entitled to serve under the law of the state.

It is of course true that discrimination in the selection of a jury against qualified jurors because of their race is, as to one belonging to the excluded race and put on trial before a jury thus selected, a denial of the equal protection of the law. Strauder v. West Virginia, 100 U. S. 303, 25 L. Ed. 664; Ex parte Commonwealth of Virginia, 100 U. S. 313, 25 L. Ed. 667; Scott v. State (Okl. Cr. App.) 233 P. 776. That, however, is not this case. There was no unlawful discrimination in the selection of the jury of which defendant could complain. If there was irregularity, it did not affect the competency of the individual jurors, and it

was incumbent on defendant, if he desired to avail himself of that question, to raise it before pleading to the merits.

In United States v. Gale, 109 U. S. 65, 3 S. Ct. 1, 27 L. Ed. 857, it was said: "Irregularities in selecting or impaneling the grand jury, which do not relate to the competency of the individual jurors, may usually be objected to by challenge to the array or motion to quash, and this must be before the general issue." As to one of the indictments, the contention might be disposed of on this authority, for defendant pleaded to the merits of that case before raising any question as to the manner in which the grand jury was selected. Besides, he offered no evidence in support of his motions until after they were overruled, pleas of not guilty entered, and the trial jury accepted by the government. When he then "raised again the point," and asked to call the jury commissioner as a witness, the court said "that in years past the court has instructed the jury commissioners that it was inadvisable for them in the exercise of their discretionary power of selecting electors to serve as jurors to select such as were women." If this may be regarded as having the effect of a stipulation of fact, it came too late.

But, aside from these questions, which seem to be insuperable objections to the contention, there is the conclusive consideration that defendant was not shown to have been prejudiced by the rulings. His case is quite different from that of one who is entitled to have the jury which passes on his life or property selected without discrimination against the race to which he belongs. In that case prejudicial effect is justly inferable from the racial exclusion. This is not a case of discrimination affecting defendant; at most it is an irregularity without implication of injury. It was for defendant to show prejudice to his rights. In Agnew v. United States, 165 U. S. 36, 17 S. Ct. 235, 41 L. Ed. 624, it was said "that for such irregularities as do not prejudice the defendant he has no cause of complaint, and can take no exception." The plea in that case charged that the irregular drawing "tended to his [defendant's] injury and prejudice," but, assigning no ground for the conclusion and being unsupported, was held defective. To the same effect is Hyde v. United States, 225 U. S. 347, 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614, where it was said: "It is not shown that any juror was disqualified, nor is it shown that the grand jury was composed of jurors not selected by the commission. It is alleged, it is true, that names which had been put in the box by the commissioners had been taken out by Harstock, and that he put back those only that he deemed fit and proper. It follows, of course, from this that, had all of the original names been in the box, the grand jury might have been differently composed, but from this it cannot be inferred that injury or prejudice resulted to the defendants." Our decision may rest on an application of this language, without determining (and we do not determine) whether in other circumstances the exclusion would be error.

[5-7] Objection was made by the defendant to the failure of the court to enlarge the charge given the jury. No exception was taken to what was given. But at the conclusion of the charge counsel asked the court to elaborate it with respect to the question of defendant's good faith. Thereupon the court reiterated in substance what it had previously said as to fraudulent intent being an element of the offenses charged. At the conclusion of this supplemental charge counsel, in response to an inquiry from the court as to whether "anything further" was desired, stated, "Nothing except the question of good faith supported by the opinion of others and the advice of counsel." The court then observed that he had stated as clearly as he could his views on that subject, and counsel reserved an exception, not to what had been said, but to the refusal of the court to extend the charge. Defendant did not indicate to what extent the elaboration should go.

Under Cincinnati Traction Co. v. Leach (6 C. C. A.) 169 F. 549, 95 C. C. A. 47, we think the request too indefinite to bring its rejection under review. But, assuming that it was not, still the court did not err, for what had already been said fairly presented the law applicable to the evidence, and clearly brought before the jury the theory of defendant that he honestly believed the representations that he was making were true. If this was found as a fact, the jury was told that defendant should be acquitted. Whether he believed that the corporation would ultimately be successful was not a question for the jury's consideration, beyond its bearing on the purpose of the scheme and his belief in the truth or falsity of the representations he made in selling the stock. Menefee v. United States, 236 F. 827, 150 C. C. A. 88; Pandolfo v. United States (C. C. A.) 286 F. 13; Moore v. United States (C. C. A.) 2 F.(2d) 839.

Judgment affirmed.