## UNITED STATES v. COMMERFORD.
### No. 376.

Circuit Court of Appeals, Second Circuit.
April 3, 1933.

Frank Aranow, of New York City (Charles H. Tuttle, Harris Berlack, and Stanley H. Fuld, all of New York City, of counsel), for appellant.

George Z. Medalie, U. S. Atty., of New York City (Thomas E. Dewey, Murray I. Gurfein, and David Paley, Asst. U. S. Attys., all of New York City, of counsel), for the United States.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The indictment upon which the appellant was convicted contained two counts. The first charged willfully attempting to defeat and evade income tax for the calendar year 1929, and the second charged willful failure to file an income tax return for the same year.

The appellee's evidence was sufficient for the jury to find that the appellant filed no income tax return for the calendar year 1929. The appellant was the business agent for a local union of the International Union of

Hoisting and Operating Engineers, and continued as such from 1920 to 1928, when he became the supervisor of the local union. It was then merged with another local, but he remained supervisor of both. His duty was to supervise the affairs of the local. He appointed officers, suspended elections, and had supreme control over all officers, delegates, and about 2,800 members of the union. He was an officer of the International Union, the vice-president of the Building Trades Council of New York, a member of its executive committee, and vice-president of the State Federation of Labor. He had charge of negotiations relating to contracts dealing with wages and working conditions. His compensation for the year 1929 was $7,800 as supervisor of the local union, $3,900 from the United Hoisting Company for services in connection with labor troubles, $377 from the Building Trades Council for services as a member of the executive committee, $1,500 for seven months' service to the Carlson Company in connection with labor troubles, $1,000 from Pugliese for services in connection with the admission of two local unions into membership of the Building Trades Council, and $2,500 from a holding corporation for services in connection with a strike.

By his testimony, the appellant attempted to deny the receipt of these sums as income, and advanced the claim that some were gifts to him for which he gave no return in service. Those who paid gave testimony that they paid these sums as compensation for services and not as gifts. This issue was decided adversely to the appellant by the jury.

■ The appellant knew or should have known of the requirement to file his return and pay a tax, but he argues that the fact that no assessment was made against him precludes prosecution or at least tended to establish that he did not willfully fail to file a return or pay a tax. Questions of intent of this character are for the jury, and willful intent in failing to file a return may be supported by the circumstances surrounding this case. Hyney v. United States, 44 F.(2d) 134 (C. C. A. 6); Wuichet v. United States, 8 F.(2d) 561 (C. C. A. 6); Baer v. United States, 54 App. D. C. 24, 293 F. 843, 845. Direct proof of willfulness is not necessary to establish guilt in income tax prosecutions. United States v. Miro, 60 F.(2d) 58 (C. C. A. 2); Capone v. United States, 51 F.(2d) 609, 76 A. L. R. 1534 (C. C. A. 7); O'Brien v. United States, 51 F.(2d) 193 (C. C. A. 7). This was not a deficiency tax, and there was no requirement to establish that an assessment

and demand were previously made. Guzik v. United States, 54 F.(2d) 618 (C. C. A. 7); Capone v. United States, 51 F.(2d) 609, 76 A. L. R. 1534 (C. C. A. 7). It is the duty of the taxpayer under the command of the statute to file his return and pay his tax without such promptings or notice.

■ In establishing moneys received as income by the appellant, the appellee proved that the appellant obtained money from contractors under the promise of settling strikes. It was proper for the appellee to show that he received bribes from unions seeking admission to the association of which he was vice-president. Without his power he could not have been of service to applicants for admission to the union or to contractors who wished their labor troubles settled. It was therefore necessary to show his position and power as descriptive of the manner in which he conducted his business and received his income. The claim of error urging that this was prejudicial is therefore without merit.

■ The deputy collector of internal revenue, while a witness, was interrogated by appellant's counsel respecting the ordinary course of departmental practice as to notice of assessment of income tax. On cross-examination he was asked hypothetical questions respecting it, but such questions called for answers merely descriptive of the departmental practice, a subject inquired into by the appellant. Indeed, on cross-examination the appellant admitted that he had been examined by a special agent prior to his indictment; that he had denied the receipt of the income referred to.

Two witnesses, labor delegates who were desirous of having their union obtain membership in the Building Trades Council, testified about their application and about communications with delegate Pugliese, who had previously obtained admission to appellant's local. There was testimony that Pugliese was told by the appellant that, if he paid a bribe, it could be done. This was relayed to the delegates, who each paid Pugliese the required sum for the purpose of getting into the Building Trades Council. Pugliese testified that he gave the moneys personally to the appellant and the applicants were admitted. In this way the testimony of the two delegates was connected and admissible against the appellant as evidence showing the income received by him.

■ After the jury retired and had been in deliberation seven hours, the trial judge recalled them and stated:

"I have called you in, gentlemen, to tell

you that I think you ought to make every possible effort to come to an agreement at least upon some of the charges, one or more, and to make all the progress you can towards that end. In the event that you can not, it will be necessary that you be taken up to the hotel for the evening, and resume your deliberations in the morning.

"I do not want to in any way exercise the slightest bit of compulsion on you, I do not do that, but I do urge you to try to come to an agreement among yourselves.

"As I said, it may be possible to agree upon some parts of the case, although not on all; that is done and it is not infrequent.

"With that further statement to you, I will excuse you and you may resume your deliberations."

Complaint is made of this charge as coercive and bringing about the verdict of guilt. We think this instruction to the jury was eminently fair and considerate. It was the duty of the judge, as has been commonly done, to send for the jury and make inquiries of this character. All that was said and done was intended to be of assistance to the jury and to provide for their rest during the night if they failed to agree and for their further deliberation in the morning. No suggestion was made as to the verdict that the jury should return. The court's advice as to the advisability of the attempt to reach an agreement was proper. Indeed, it was the duty of the judge. Allen v. United States, 164 U. S. 492, 17 S. Ct. 154, 41 L. Ed. 528; United States v. Rosso, 58 F.(2d) 197 (C. C. A. 2); Vachuda v. United States, 21 F.(2d) 409 (C. C. A. 2). In Burton v. United States, 196 U. S. 283, 25 S. Ct. 243, 49 L. Ed. 482, Berger v. United States, 62 F.(2d) 438 (C. C. A. 10), Stewart v. United States, 300 F. 769 (C. C. A. 8) and Peterson v. United States, 213 F. 920 (C. C. A. 9), the reversals of convictions were based upon improper inquiries addressed to the foreman concerning the division of the jurors. They are not relevant here. In Wissel v. United States, 22 F.(2d) 468 (C. C. A. 2), the language employed in expressing the judge's direction to the jury was tantamount to advice of conviction.

■■■ Error is assigned because of exceptions taken to the cross-examination of character witnesses offered by the appellant. The appellant called two witnesses as to his good repute and character. On cross-examination the appellant charges they were examined by hypothetical questions bearing insinuations, improper and harmful. They were asked about a decision and a judgment entered

thereon in the state Supreme Court. They stated they knew of such a decision. One witness was asked: "Did you ever hear that it had been said judicially in connection with Commerford's activities in his own union that he has expended and directed the expenditure of large sums of money and has rendered no account to the members of the local union?" To which the witness replied he had not.

The following questions were asked:

"Q. Did you ever hear it stated judicially of the defendant that $26,140 was paid out for legal expenses, of which $8,200 in checks were drawn to the order of counsel for the defendant herein and the balance regarding which no explanation was made was drawn by checks cashed by officers, agents or employees at the bank and delivered to the supervisor, $21,100 in checks similarly cashed and delivered were marked 'good of local' but otherwise unexplained?

"Q. And I ask you now, if you had heard that this was said of the defendant by a Justice of the Supreme Court of this state, would that alter your opinion that the defendant is, by reputation, an honest and truthful person?

"Q. * * * I am asking you whether if you had heard that a Justice of the Supreme Court said that, would you still stick to your opinion that the defendant was a person whose reputation was that he was honest and truthful? * * *

"Q. * * * If you heard that a Judge had said at the conclusion of a case, that money in the union of which he was the supervisor was unaccounted for by him, would you still say that in your opinion he was a man of good repute as to honesty and veracity?

"Q. I again ask you if a judge solemnly said these things that I have suggested, would you still say that Commerford was a man of good reputation?"

This action in the state court might be called to the attention of the witness, since he said he knew of such a suit, and it was a proper subject of cross-examination in determining his reason and estimate for the opinion expressed of the appellant. Reputation evidence is gained from the community estimate of a defendant, and it was important to learn whether the witness, having heard of the rendition and publication of such decision, would adhere to his opinion.

The judgment of the state court was not offered nor suggested for the jury's consideration. The purpose of the cross-examination was to establish, not the acts connected with

the facts there involved or to prove the truth of rumors concerning the charges in that litigation, but merely to show whether such judicial expressions or even the circulation of the rumors thereof, affected the reputation of the appellant in the estimate of the witnesses who were testifying to his good character. The appellant having put his character in issue by offering testimony concerning it permits the character witnesses to be interrogated concerning rumors and suspicions, not because they are of probative force, but merely to test the witnesses' standard of opinion. Spalitto v. United States, 39 F.(2d) 782 (C. C. A. 8); Lawrence v. United States, 56 F. (2d) 555 (C. C. A. 7); Lisansky v. United States, 31 F.(2d) 846, 67 A. L. R. 67 (C. C. A. 4); 2 Wigmore on Evidence (2d Ed.) § 988.

The appellant calls our attention to People v. Elliott, 163 N. Y. 11, 57 N. E. 103, 104, as in opposition to this view. In that case the prosecuting attorney, in cross-examining the defendant's character witnesses, was permitted over objection to ask the following question: "If it should develop that a judgment of the supreme court of this state had granted a divorce on the ground of cruel and inhuman treatment, and in that judgment it stated [setting forth that defendant had beaten his wife] what would you say as to this man's character being good or bad?"

The majority of the court, three judges not passing on this point, said: "This clearly incompetent question was highly prejudicial to the defendant; placing, as it did, before the jury that particular portion of the former judgment upon which the prosecution laid stress."

The court thought that particular question improper, but proceeded to state: "It was competent for the district attorney to ask the witnesses, who had testified to defendant's good character, whether they had heard of the divorce proceeding, and, if so, whether it qualified to any extent their previously expressed opinion as to defendant's good character."

See People v. Laudiero, 192 N. Y. 304, 309, 85 N. E. 132.

Indeed, the cases have gone so far as to permit inquiry as to rumors of serious crime.

At bar, the inquiry was confined to a civil judgment. This judgment involved a labor controversy in which the appellant was interested. The inquiry was addressed to a decision and judgment rendered after witnesses had testified and there had been a judicial determination. It was relevant therefore to find out from a witness as to good reputation the effect the judgment had upon the community's opinion and the witness' estimate of it, particularly since the litigation involved the appellant. We find no error in requiring answer to these questions.

As stated, the appellant's conviction is on two counts of the indictment, one charging a willful attempt to evade and defeat an income tax for 1929, and the second a willful failure to file an income tax return for the same year. The Sixth Amendment to the Constitution provides that the accused must be tried in the district where the crime is committed. The Revenue Act of 1928, § 53 (b), 26 USCA § 2053 (b), provides that returns shall be made "to the collector for the district in which is located the legal residence or principal place of business of the person making the return. * * *" Appellant resided in the Eastern district of New York, within the First internal revenue collection district for the state of New York, and his principal place of business was within the Southern district and the Third collection district. The indictment charged failure to make a return in either district. The indictment charges in the first count that the willful attempt to avoid and defeat the tax was committed within the Southern district of New York, in that the defendant "wilfully failed and refused to make under oath a return to the Collector of Internal Revenue for the Third Collection District * * * and any return whatever and * * * wilfully failed and neglected to pay the tax aforesaid, or any part thereof, to the proper Collector of Internal Revenue. * * *" The second count charges that the crime of failing to file a return was committed in the Southern district of New York, in that the appellant willfully failed to make a return to the collector for the First or Third district. Appellant argues that the indictment does not state where the offense was committed, and fails to prove venue, and appellant asks that the indictment be dismissed.

When omission to act constitutes a crime, the venue is the jurisdictional locality where the act should have been performed. State v. Yocum, 182 Ind. 478, 106 N. E. 705; People v. Meyer, 12 Misc. 613, 33 N. Y. S. 1123; People ex rel. Armstrong v. Quigley, 75 Misc. 151, 134 N. Y. S. 953; State v. Peabody, 25 R. I. 544, 56 A. 1028; Regina v. Milner, 2 Car. & K. 310, 175 Eng. Rep. 128. And where the offense, as here, consists of the failure to file a document, it is committed in the place where the document should have been filed

and not elsewhere. Rumely v. McCarthy, 250 U. S. 283, 39 S. Ct. 483, 63 L. Ed. 983; U. S. v. Lombardo, 241 U. S. 73, 36 S. Ct. 508, 60 L. Ed. 897; New York C. & H. R. R. v. United States, 166 F. 267 (C. C. A. 2). The act of filing a return should have been done in either the Eastern or Southern district. Appellant asserts that the failure to act in either district is an offense in one or the other district only, and claims that the government must prove in which district it is an offense. But filing a return in either district discharges the taxpayer's complete duty in both districts. Equally a failure to make a return in either district is an offense in both districts, and the offender may be tried in either district. The objection that this would permit a taxpayer to be tried twice for what is, in substance, one offense, is erroneous. We do not say that the taxpayer owes two duties to file a return or that failure to make a return constitutes two separate offenses. There is but one duty to make a return, and failure constitutes but one offense, and that duty exists and the offense occurs in two districts. This view is supported by the Supreme Court in Haas v. Henkel, 216 U. S. 462, 474, 30 S. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112. There a statute was construed as meaning that the crime was to be considered as committed in both districts, and the court said this presented no difficulty, since the government must then elect to try the accused in one district or the other.

We find no error which warrants our interfering with the judgment of conviction.

Judgment affirmed.