# UNITED STATES *v.* LOMBARDO.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF WASHINGTON.

No. 830. Submitted April 10, 1916.—Decided April 24, 1916.

Where a criminal statute does not define a word used therein, its etymology must be considered and its ordinary meaning applied.

The word file means to deliver to the office indicated and to send to such office through the mail.

Under § 6 of the White Slave Traffic Act the required certificate must be filed in the office of the Commissioner of Immigration, and the offense of not filing is not committed in another district where the person is harbored, nor has the District Court of the United States for that district jurisdiction of the offense.

Such an offense is not a continuing offense which, under § 42 of the Judicial Code (§ 731, Rev. Stat.), can be punished in either of more than one district.

This court will not, in order to accommodate the venue of a particular offense, introduce confusion into the law.

The proper and reasonable construction of a criminal statute must not be refused for fear of delay in prosecution of offenders; if the statute as so construed might embarrass prosecutions it may be corrected by legislation.

THE facts, which involve the construction and application of § 6 of the White Slave Traffic Act, are stated in the opinion.

*Mr. Assistant Attorney General Wallace* for the United States.

There was no appearance for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

Error under the Criminal Appeals Act (March 2, 1907, c. 2564, 34 Stat. 1246) to review a decision of the District Court for the Western District of Washington (228 Fed. Rep. 980) sustaining a demurrer to an indictment founded on the "White Slave Traffic Act" (June 25, 1910, c. 395, 36 Stat. 825, 826).

Section 6 of that act provides that every one "who shall keep, maintain, control, support or harbor in any house or place, for the purpose of prostitution, . . . any alien woman . . . within three years after she shall have entered the United States . . . shall file with the Commissioner General of Immigration a statement in writing setting forth the name of such alien woman, . . . the place at which she is kept, and all facts as to the date of her entry into the United States, the port through which she entered, her age, nationality, and parentage, and concerning her procuration to come to this country, within the knowledge of such person; and any person who shall fail within 30 days after such person shall commence to keep, etc. . . . any alien woman, . . . to file

such statement concerning such alien woman, ⁚ . . .
with the Commissioner General of Immigration, or who
shall knowingly and wilfully state falsely, or fail to disclose
in such statement any fact within his knowledge or belief
with reference to the age, nationality, or parentage of any
such alien woman, . . . or concerning her procura-
tion to come to this country, shall be deemed guilty of a
misdemeanor, etc. . . ."

The statement is not excused because it may have in-
criminating character, but it is provided that the person
making it shall not be prosecuted or subjected to any
penalty or forfeiture under any law of the United States
for or on account of any transaction, matter, or thing
concerning which he may truthfully report in such state-
ment as required by the provisions of the act.

The indictment charged that one Jessie Milos, an alien
woman and a citizen and subject of the Kingdom of Great
Britain, had entered the United States in the month of
May, 1914, and that Angeline Lombardo, knowing these
facts, did, in a house in the City of Seattle, Northern
Division of the Western District of Washington, keep,
maintain, control and harbor Jessie Milos for the purpose
of prostitution and for other immoral purposes, and un-
lawfully, knowingly and wilfully failed to file with the
Commissioner General of Immigration a statement in
writing as required by the statute, or any statement con-
cerning Jessie Milos.

It was alleged that the United States and Great Britain
are parties to an agreement or project or arrangement for
the suppression of the white slave traffic adopted July 25,
1902.

There were two grounds of demurrer: (1) Section 6 of
the White Slave Act is unconstitutional in that it con-
travenes rights guaranteed by the Fourth and Fifth
Amendments to the Constitution of the United States.
(2) The court was without jurisdiction of the subject-

matter as the prosecution is in contravention of rights guaranteed by the Sixth Amendment.

The District Court sustained the demurrer on both grounds. We, however, shall confine our decision to the second ground as that attacked the jurisdiction of the court in that the offense was not committed in the district in which the indictment was found. Passing on it the court said:

"The gist of the offense is the failure 'to file with the Commissioner General of Immigration' a statement, etc. By the act of March 3, 1891, chap. 551, sec. 7, page 1085, 26 Stat. at Large, as amended by the act of March 2, 1895, chap. 177, 28 Stat., page 780, the office of the Commissioner of Immigration was created and his office fixed at Washington, D. C. The Government contends that the offense was a continuing one and extended from this district to Washington, D. C., and that the filing of the statement need not be at the office in Washington, but may be deposited in the post office of the United States, addressed to the Commissioner General, and this forwarding through the usual course of mail should be considered as 'filing,' and that the failure to post within thirty days would commence the offense which would be continuous. This contention cannot be reconciled with the language employed in the act. The word 'file' was not defined by Congress. No definition having been given, the etymology of the word must be considered and ordinary meaning applied. The word 'file' is derived from the Latin word '*filum*,' and relates to the ancient practice of placing papers on a thread or wire for safe keeping and ready reference. Filing, it must be observed, is not complete until the document is delivered and received. 'Shall file' means to deliver to the office and not send through the United States mails. *Gates* v. *State*, 128 N. Y. Court of Appeals, 221. A paper is filed when it is delivered to the proper official and by him received and filed. Bouvier

Law Dictionary; *White* v. *Stark*, 134 California, 178; *Westcott* v. *Eccles*, 3 Utah, 258; *In re Van Varcke*, 94 Fed. Rep. 352; *Mutual Life Ins. Co.* v. *Phiney*, 76 Fed. Rep. 618. Anything short of delivery would leave the filing a disputable fact, and that would not be consistent with the spirit of the act."

The Government in its argument here contests the views of the District Court, repeats its contention that the offense was begun in the State of Washington, and relies on § 42 of the Judicial Code, substantially reproducing § 731 of the Revised Statutes. It provides as follows:

"When any offense against the United States is begun in one judicial district and completed in another, it shall be deemed to have been committed in either, and may be dealt with, inquired of, tried, determined, and punished in either district, in the same manner as if it had been actually and wholly committed therein."

The Government also cites a number of cases which it urges support the application of the statute to the case at bar. We are unable so to regard the cases or to give the statute the application contended for. Nor does the case call for elaborate discussion. Indeed, it would be difficult to add anything to the reasoning of Judge Neterer in the District Court.

Undoubtedly where a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done; or where it may be said there is a continuously moving act commencing with the offender and hence ultimately consummated through him, as the mailing of a letter; or where there is a confederation in purpose between two or more persons, its execution being by acts elsewhere, as in conspiracy.

It may be that where there is a general duty it may be considered as insistent both where the "actor" is and the "subject" is, to borrow the Government's apt designa-

tions, as in the case of the duty of a father to support his children; and if the duty have criminal sanction it may be enforced in either place. The principle is not applicable where there is a place explicitly designated by law, as in § 6.

The Government, however, contends that "with few exceptions every crime has continuity. But the law, being essentially practical, does not regard every crime as continuous for the purpose of jurisdiction. . . . For practical purposes it usually suffices to punish where the actor began, or where the subject suffered the intended result."

If these propositions be granted we do not see that they carry us far in determining where a violation of § 6 is begun or completed, nor do we appreciate the criticism of the decision of the court below that it "failed to distinguish between the 'beginning' and the 'completion' of the offense; giving the words 'shall file,' etc., a meaning so narrow as to destroy the section." But this is assertion. A court is constrained by the meaning of the words of a statute. They mark the extent of its power, and our attention has not been called to any case which decides that the requirement of a statute, whether to secure or preserve a right or to avoid the guilt of a crime, that a paper shall be filed with a particular officer, is satisfied by a deposit in the post office at some distant place. To so hold would create revolutions in the procedure of the law and the regulation of rights. In instances it might, indeed, be convenient; in others, and most others, it would result in confusion and controversies; and we would have the clash of oral testimonies for the certain evidence of the paper in the files. We hesitate, in order to accommodate the venue of a particular offense, to introduce such confusion. And would it not, besides, in particular cases preclude the possibility of a conviction, putting evidence entirely in the hands of the defendant?

And there are other considerations. If depositing in the post office of the statement prescribed be required by the statute it, of course, would satisfy the statute, but to what instant of time would it be referred and at what risk the time or delays of transportation?

There need not be a prolonged embarrassment in the prosecution of offenders as the Government fears. If § 6 is deemed defective it can be corrected by legislation.

*Judgment affirmed.*