UNITED STATES v. VALENTI.

Crim. No. 43395.

United States District Court,
E. D. New York.

March 23, 1954.

Leonard P. Moore, U. S. Atty., Brooklyn, N. Y., Paul Windels, Jr., Asst. U. S. Atty., New York City, for the United States.

Henry K. Chapman, New York City, for defendant.

GALSTON, District Judge.

The indictment returned against the defendant, dated December 23, 1953, reads as follows:

"That, in the Eastern District of New York, on or about and between February 2, 1953 and the date of the filing of this indictment, the defendant, Antonio Valenti, an alien against whom a final order of deportation has been outstanding from July 2, 1946 to the date of filing of this indictment by reason of his being a member of the class described in Title 8, United States Code, Section 1251(a), paragraph 4, knowingly, wilfully and unlawfully failed to make timely application in good faith for travel documents necessary to his departure pursuant to said final order of deportation. (Title 8, United States Code, Section 1252(e) )"

The defendant waived a jury trial. The material facts have been stipulated.

The defendant is a native and citizen of Italy, and an alien residing in Brooklyn, New York. On July 2, 1946, a final order of deportation was entered against him by the Board of Immigration Appeals. The basis of deportation was specified as conviction for a crime involving moral turpitude, committed within five years of defendant's entry into the United States, and sentence therefor to confinement in a prison for more than one year.

A warrant of deportation was issued but its execution was deferred pending disposition of an application by the defendant for executive clemency, and judicial action taken in an attempt to invalidate the final order of deportation. These attempts to obtain executive and judicial relief having proved unsuccessful, the warrant of deportation was reinstituted. A further stay in deporta-

tion was granted pending action on another application for executive clemency. Action on this application was also deferred pending the outcome of certain criminal proceedings against the defendant pending in the Southern District of New York. On October 31, 1952, the defendant was convicted and sentenced to imprisonment for five years. He was released from custody by the Court of Appeals on December 23, 1952, upon the posting of a bond, pending an appeal of his conviction.

In February and March 1953, the defendant was notified, in writing and orally, that a final order of deportation was outstanding against him and that he was required by law to take steps in good faith to obtain the necessary travel documents.

During the period from February 2, 1953 to the filing of the present indictment, the defendant did not make any application for travel or other documents necessary to his departure. During this time he was at liberty under the bond filed with the Court of Appeals.

Section 1252(e) of Title 8, U.S.C.A., provides, in material part, as follows:

"Any alien against whom a final order of deportation is outstanding by reason of being a member of any of the classes described in (specified paragraphs) * * * who * * * shall willfully fail or refuse to make timely application in good faith for travel or other documents necessary to his departure, * * * shall upon conviction be guilty of a felony * * *."

The parties take the view that any application for travel documents would be made to an Italian Consulate office. Concededly there is no Italian Consulate in the Eastern District of New York. There is, however, one located in the Southern District of New York.

It is noted that, according to the stipulated facts, on or about August 15, 1949, the defendant was granted a stay in deportation. The facts, as stipulated, fail to disclose when this stay expired.

Apparently the stay was based on an application for executive clemency. Action on this application was deferred pending the outcome of the criminal proceedings brought in the Southern District of New York. However, the record is equally silent with respect to the final determination of this application. Neither side has made any reference to this aspect of the defendant's case.

The court is confronted at the threshold of the case with the issue whether venue of the crime charged in the indictment is properly laid in the Eastern District of New York. The VIth Amendment of the Constitution provides that in all criminal prosecutions, trial shall be had in the district wherein the crime shall have been committed. The defendant contends that since an application for travel documents would have to be made to the Italian Consulate located in the Southern District of New York, the crime, if any, for willful failure or refusal to make application for the documents would be committed there and not in the Eastern District of New York. On the other hand, the government contends that section 1252(e) "proscribes a willful failure, and the locus of the necessary element of willfulness can only be where the intent not to perform the required act was harbored, and that in turn must be within the Eastern District of New York where the defendant resided."

In United States v. Lombardo, 241 U. S. 73, 36 S.Ct. 508, 60 L.Ed. 897, the statute involved made it a misdemeanor to fail to file the statement required thereunder with the Commissioner General of Immigration within a specified time. The office of the official was in Washington, D. C., as created and fixed by statute. The defendant was indicted and brought to trial in the State of Washington. A demurrer to the indictment was sustained on the ground that violations of the act were committed at Washington, D. C., where the official with whom the statement was required to be filed had his office, and not elsewhere.

78

The following passage in the opinion of the district court, 228 F. 980, 982, was quoted:

"The government contends that the offense was a continuing one, and extended from this district to Washington, D. C., and that the filing of the statement need not be at the office in Washington, but may be deposited in the post office of the United States, addressed to the Commissioner General, and this forwarding through the usual course of mail should be considered as 'filing', and that the failure to post within thirty days would commence the offense, which would be continuous. This contention cannot be reconciled with the language employed in the act. * * * Filing, it must be observed, is not complete until the document is delivered and received. 'Shall file' means to deliver to the office, and not send through the United States mails."

The argument was also made that section 42 of the Judicial Code, providing that offenses against the United States begun in one district and completed in another shall be deemed to have been committed in either, was applicable. The provision is now found in section 3237 of Title 18, U.S.C.A. The court stated, however, that the statute was inapplicable where there is a place explicitly designated by law for the filing, as in the statute involved.

In United States v. Commerford, 2 Cir., 64 F.2d 28, 32, certiorari denied 289 U.S. 759, 53 S.Ct. 792, 77 L.Ed. 1502, the defendant was indicted for willful failure to file an income tax return. The applicable statute provided that returns shall be made " 'to the collector for the district in which is located the legal residence or principal place of business of the person making the return.' " In affirming the conviction, where one of the appellant's arguments was improper venue, the court, 64 F.2d at pp. 32–33, stated:

"When omission to act constitutes a crime, the venue is the jurisdictional locality where the act should have been performed. * * * And where the offense, as here, consists of the failure to file a document, it is committed in the place where the document should have been filed and not elsewhere."

The statutes involved in the Lombardo and Commerford cases expressly designated the place where the statement in question was required to be filed. The Supreme Court considered this an important factor in the Lombardo case. On the other hand, in the case at bar the relevant statute provides only that the alien "make timely application". Ordinarily, such application would be made to the nearest consulate office, which in this case would be to the Italian Consulate in the Southern District of New York. However, the language of the statute does not preclude application being made to a consulate office located in any other city within the United States, for the statute does not require that a particular paper shall be filed with a particular officer located at a particular place.

Section 3237 of Title 18, U.S.C.A. provides:

"Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."

In examining section 1252(e) of Title 8, U.S.C.A, the statute upon which the indictment is based, in the light of the Lombardo case it cannot be said that the language of the statute prevents the application of the above quoted section of Title 18, U.S.C.A., in respect to offenses begun in one district and completed in another.

Failure to make application being negative in nature, it is difficult to ascertain its beginning or its completion. However, for present purposes it is reason-

able to say that it continues where the defendant is personally present and where he resides so long as the application is not made.

■ From the foregoing it must be concluded that venue properly lies in the Eastern District of New York.

■ With respect to the merits of the case the defense is, basically, that the requirement of section 1252(e) that there be a "timely application in good faith" was not violated because of the defendant's status as a consequence of the conviction and sentence in the Southern District of New York. The defendant contends that the failure to apply for travel documents while the appeal from the conviction was pending could not be regarded as being in bad faith.

The government contends that being released from custody on the appeal bond, there was no physical restraint upon the defendant to proceed to a consulate and make the necessary application. It is the government's position that the statute relates only to the process of applying for documents and does not concern itself with whether the alien is legally available for actual deportation at the particular time.

Admittedly, although at large under the bond pending appeal, the defendant's movements were restricted under the terms of said bond. Any attempt to depart the jurisdiction of the District Court of the United States for the Southern District of New York without leave would be in violation of the terms of the bond and would probably subject the defendant to punishment for contempt.

If the circumstances preventing the defendant's liberty in leaving the country were merely inconsequential in nature, and something which he could personally eliminate, they ought not to constitute a bar to the defendant making the required application; but the important factor to be considered is that on October 31, 1952 the defendant had been convicted and sentenced to imprisonment for five years. For all intents and purposes, therefore, he was unable to depart the country for some time. It may be noted here that section 1252(h) provides as follows:

"An alien sentenced to imprisonment shall not be deported until such imprisonment has been terminated by the release of the alien from confinement." 8 U.S.C.A. § 1252(h).

The fact that he was at large under the bond did not alter the situation materially. Unless the conviction was reversed, it still barred his departure. Moreover, so far as ability to make application was concerned, it probably could have been made by mail if the defendant had been actually confined, as well as in person not under physical restraint. The fact that he was at large under the bond constituted no greater assurance of a likelihood of reversal or an earlier conclusion of his sentence.

In asserting that it was the defendant's duty to make an application, the government apparently is of the view that such application would not have been a futile one, but had some chance of success, despite the conviction and five years' sentence then outstanding. It would appear, then, that the government seeks to impale the defendant on the horns of a painful dilemma. On the one hand, if the defendant takes steps to enable him to depart this country, he risks the charge that he is taking measures to violate the provisions of the bond. On the other hand, if he does not take steps to do so, he will be subject to prosecution for a violation of the Immigration & Nationality Act of 1952.

Subsequent to the conclusion of the trial herein, the Court has been informed by the Government that the mandate of the Supreme Court, Giallo v. U. S., 346 U.S. 929, 74 S.Ct. 319, affirming the judgment of the District Court, had been handed down and that the defendant started serving his sentence on February 13th. Any possible departure, therefore, must await the defendant's release from confinement, at which time the order of deportation can be enforced.

Meanwhile this indictment must be dismissed.

Pursuant to Rule 23 of the Federal Rules of Criminal Procedure, subdivision (c), 18 U.S.C.A., since the trial was without a jury the Court makes a general finding of dismissal of the indictment, and notes that there has been no request that the facts be found specially.