**CARIBBEAN ENGINEERING CORPORATION,**
**a Virgin Islands Corporation,**
**Plaintiff**
**v.**
**ACTING COMMISSIONER OF AGRICULTURE AND LABOR,**
**Defendant**

Civil No. 175 - 1957
District Court of the Virgin Islands
Div. of St. Thomas and St. John

May 29, 1958

*See, also, 162 F. Supp. 193*

DAVID E. MAAS, ESQ., Charlotte Amalie, Virgin Islands and FIDDLER, GONZALEZ, GUILLEMARD AND RODRIGUEZ, San Juan, Puerto Rico, *for plaintiff*

LEON P. MILLER, ESQ., U.S. Attorney, Charlotte Amalie, Virgin Islands, *for defendant*

MARIS, *Circuit Judge*

This is an appeal by the plaintiff from various orders of a compensation officer of the Department of Agriculture and Labor that certain awards of compensation made to four of the plaintiff's employees under the Kean Workmen's Compensation Act of St. Thomas and St. John, approved March 9, 1954, now incorporated in chapter 11, Workmen's Compensation, of Title 24 of the Virgin Islands Code, for injuries sustained by them in an accident in the Caneel Bay operations of the plaintiff on July 8, 1957 may not be paid out of the Government Insurance Fund because the plaintiff was an uninsured employer at the time the injuries occurred. Since the orders were entered prior to September 1, 1957 they are directly reviewable by this court without the necessity of intermediate appeal to the Government Employees Service Commission as provided by 24 V.I.C. § 256.

From the evidence I find the facts to be as follows:

On January 26, 1956 the plaintiff filed the statement required by section 28 of the Act (now 24 V.I.C. § 276) of its actual payroll for the year 1955 with respect to its Caneel Bay operations and on February 2, 1956 paid the premium determined to be due thereon. On January 15, 1957 the plaintiff filed with the Commissioner of Finance a statement of its estimated payroll for its Caneel Bay operations for the first half of 1957 and on the same day paid the semi-annual premium computed thereon. On July 8, 1957 the plaintiff filed its statement of its estimated payroll for its Caneel Bay operations for the second half of 1957 and on July 16, 1957 paid the semi-annual premium computed thereon. On January 15, 1957 the plaintiff had deposited in the substation of the United States postoffice at stop 17 in Santurce, Puerto Rico, in an envelope addressed to the Commissioner of Finance in St. Thomas, the statement required by section 28 of the Act of its actual payroll of its Caneel Bay operations for the year 1956 and a check for the balance of unpaid premium for 1956 shown to be due thereby, but the statement and check appear to have been lost in the mails and were never actually received by the Commissioner or filed in his office.

■ These being the facts I turn to consider the principles of law which are involved and their application to the facts. The basic question for decision is, of course, whether the plaintiff was in the status of an insured employer on July 8, 1957, the date when its employees were injured. We start with the proposition of law that by filing its statement of actual payroll for the year 1955 on January 26, 1956 and paying the semi-annual premium for the first half of 1956 on February 2, 1956 the plaintiff had insurance coverage in the Government Insurance

342

Fund from January 31, 1956 or February 2, 1956, depending on whether it had an insured status on December 31, 1955, which coverage continued until January 31, 1957 in any event. Kean Workmen Compensation Act, sections 28, 29, 30 (now 24 V.I.C. §§ 276, 277, 278);[1] Carmona v. De Jongh, D.C.V.I. 1958 (3 V.I. 281), 157 F. Supp. 540, 543. In the Carmona case this court further held under the Pentheny Employees Compensation Act of St. Croix which in this respect is identical with the Kean Workmen Compensation Act of St. Thomas and St. John and

[1] "§ 276. Reports by employers; penalty

"Every employer affected by this chapter shall file with the Commissioner of Finance not later than January 15 of each year a statement under oath on forms supplied by the Commissioner of Finance, showing the number of workmen employed by said employer, the kind of occupation or industry of the workmen, and the total amount of wages paid to the workmen during the calendar year. Notices requesting compliance with this section shall be published at least once a week for four weeks in a newspaper of general circulation in the Virgin Islands.

"The premium prescribed by this chapter shall be computed on the total amount of wages declared in said statements. Every employer employing workmen covered by this chapter for any part of the half year shall file the aforesaid duplicate statement, under oath, including the estimated wages to be paid to said workmen or employees, before commencement of the work; and upon termination of the work, the employer shall file a sworn statement showing the actual amount of wages paid, on which sum the corresponding liquidation shall be made either by assessment of additional premium or by refund of excess premium collected. Should any employer substantially increase his payroll during the term of insurance, he shall file a supplementary statement within 15 days after such increase, and he shall pay additional deposit premiums on the basis of such increase.

"Should any employer fail to file such statements on the date specified above or before the commencement of temporary work, he shall be fined not more than $500."

"§ 277. Period of coverage; uninsured employer

"Any employer who has been covered by the Government Insurance Fund up to the end of the preceding year shall be covered during the period January 1, to January 31, provided that every employer who has not presented the statement under oath and who has not paid the premiums within the time herein specified shall be considered an uninsured employer."

"§ 278. Receipt for premium; time for payment; action for collection

"On receipt of payment, the Commissioner of Finance shall forward to the employer a receipt which shall be prima facie evidence of said payment of the premium and insurance coverage. Premiums shall be paid by every employer into the Government Insurance Fund on or before January 31 and June 30 of each year, except that premiums of employers employing workmen for any part of a half year shall be paid within 30 days after the filing of the statement required by section 276 of this title. If any employer defaults in any payment of premium, the amount due from him shall be collected by civil action in the name of the government of the Virgin Islands."

with the present law (24 V.I.C. chap. 11), that an insured employer who continues to be subject to the Act becomes uninsured only if he fails to file with the Commissioner of Finance the annual statement required by the Act and also fails to pay the semi-annual premiums assessed thereunder. The proviso of section 29 of the Act (24 V.I.C. § 277) which provides for the transfer of an insured employer to an uninsured status "who has not presented the statement under oath and who has not paid the premiums within the time herein specified" must refer to the period January 1 to January 31 specified earlier in the section during which an employer who was insured on December 31st remains covered. I am clear that the statement referred to in the proviso of section 29 (24 V.I.C. § 277) is the annual statement of wages paid during the previous calendar year which section 28 (24 V.I.C. § 276) provides that every employer affected by the Act shall file with the Commissioner under penalty of $500 fine and which sections 24 and 25 (now 24 V.I.C. §§ 272, 273)[2] make the basis for the assessment and levy of premiums. It is perfectly clear that the statement referred to in the proviso is not the semi-annual statement of estimated future payroll which the Commissioner of Finance apparently permitted the plaintiff to file with him on January 15, 1957, since such estimated statements

[2]"§ 272. Assessment and collection of premiums
"The Commissioner of Finance shall assess and levy on every employer affected by this chapter annual premiums determined in accordance with this chapter, on the total amount of wages paid during the preceding year by said employer to workmen and employees who were, or would have been, entitled to the benefits of this chapter. Such premium shall be collected semi-annually in advance on or before January 31 and June 30 of each year, and shall be deposited in the Government Insurance Fund established by this chapter."
"§ 273. Fixing of premium
"The premium shall be fixed as soon as the report hereafter referred to is received by the Commissioner of Finance, the basis therefore to be the total amount paid by the employer of wages of workmen and employees employed by him during the previous year, who were, or would have been entitled to the benefits of this chapter. Salaries or wages reported by employers shall not be computed at a rate exceeding $50 per week for any individual workman or employee."

of future payroll are not even mentioned in the Act. Furthermore the reference cannot be to the initial statement required by section 28 (24 V.I.C. § 276) to be filed by an employer employing workmen for part of a half-year. For, as the last sentence of that section clearly indicates, that provision relates only to an employer engaging in temporary work.

■■ Since, as we have seen, the filing of a semi-annual statement of estimated future payroll does not operate to continue an employer's insured status which has otherwise terminated I need not here consider whether the Commissioner of Finance has implied authority under the Act to permit the filing of such an estimated statement and to assess the semi-annual premium on the basis of estimated future payrolls rather than on the basis of the actual payroll of the prior year, as section 24 of the Act (24 V.I.C. § 272) appears to require him to do. I restrict myself to concluding in this connection that an employer is entitled to have a premium which has been fixed and assessed by the Commissioner in this manner treated as a premium the payment of which by him will, within the meaning of the proviso of section 29 of the Act (24 V.I.C. § 277), operate to continue his insured status. For an employer is certainly entitled to rely upon the assessment and levy by the Commissioner of the premiums which are due from him as representing the premiums which he owes and must pay in order to maintain his insured status.

■■ I come then to the question whether the plaintiff may be regarded as having filed its annual statement in January 1957 of actual payroll for 1956 and thereby to have continued its insured status for the year 1957. The plaintiff urges that the mailing of this statement in a United States post office in Puerto Rico amounted to its filing. I cannot agree. On the contrary I am satisfied

that when the Act required the statement to be filed with the Commissioner it used the word "file" in its ordinary sense of being physically delivered to the Commissioner so that he might receive it and place it in his records. This is the meaning commonly given to the word when thus used in a statute. And unless the statement required by the Act actually reaches the Commissioner and finds its place in his office records it cannot serve its purpose of providing the basis for his assessment of premiums on the employer. Mere deposit in the post office at some distant place is clearly not enough. United States v. Lombardo, 1916, 241 U.S. 73, 36 S. Ct. 508, 60 L. Ed. 897; McRae v. Woods, Em. App. 1948, 165 F.2d 790, certiorari denied 333 U.S. 882, 68 S. Ct. 912, 92 L. Ed. 1157; United States v. Valenti, 3 Cir., 1953, 207 F.2d 242, 245; Modern Engineering Co. v. United States, 1953, 113 F. Supp. 685, 126 Ct. Cl. 136; Narramore v. Fannin's Gas & Equipment Company, 1956, 80 Ariz. 115, 293 P.2d 671. It follows that the post office must be regarded as the plaintiff's agent for delivery and filing of the statement entrusted to it and the results of its failure to do so in this instance must be borne by the plaintiff.

But even though the plaintiff failed to file in January 1957 or thereafter its annual statement of actual payroll for 1956 as required by the Act it nonetheless was insured until January 31, 1957, as we have seen, and its insured status continued after that date if it paid the semi-annual premium due on January 31, 1957. The facts show that it did pay on January 15, 1957 the semi-annual premium assessed by the Commissioner on the basis of its statement of estimated payroll filed on that day. As I have already said this payment, even though assessed on an estimated basis, was nonetheless assessed by the Commissioner against the plaintiff and must, therefore, for the purpose of determining continuance of its insured status,

be regarded as a semi-annual payment of premium by the plaintiff within the meaning of section 29 of the Act (24 V.I.C. § 277). Accordingly, since existing insured status is lost only if there is default in both filing the annual statement and paying a semi-annual premium, it follows that the plaintiff's insured status continued by virtue of that payment until June 30, 1957, the end of the half year for which the payment was made.

If the semi-annual premium due for the second half of 1957 had been paid on or before June 30, 1957 the plaintiff's insured status would have continued for the second half of 1957 even though it had not yet filed its annual statement and it would have been insured on July 8, 1957 when the accident took place in which its employees were injured. But the fact is that the semi-annual payment was not made until July 16, 1957. Whether its payment then operated to restore the plaintiff's lost insured status, even though the annual statement had not yet been filed, I need not decide. For it is perfectly clear as the Supreme Court of Puerto Rico has held with respect to similar provisions of the Workmen's Accident Compensation Act of that commonwealth (11 L.P.R.A. § 1 et seq), from which Act our statute was taken, although in somewhat abbreviated and modified form, that between July 1 and July 16, 1957 the plaintiff was uninsured, having neither filed the annual statement required by the Act to be filed in January 1957 nor paid the semi-annual premium due under the Act for the half year beginning July 1, 1957. Montaner, Mgr. v. Industrial Commission, 1941, 59 P.R.R. 398; Sucrs. de J. Gonzalez & Cia. v. Industrial Commission, 1943, 61 P.R.R. 295; P. R. Am. Sugar Refinery, Inc. v. Industrial Commission, 1944, 63 P.R.R. 611. The act of the Commissioner of Finance in receiving the semi-annual premium on July 16 may have resulted in the reinstatement of the plaintiff's coverage on that date, a point I

do not decide. But, in view of the plain terms of the statute, it certainly did not set up an estoppel against the Government to deny that the plaintiff was insured prior to that date. It follows that the Compensation Officer did not err in ordering the plaintiff itself to pay the awards of compensation which he made to its employees who were injured on July 8, 1957 and in holding that the plaintiff was not an insured employer on that date who was entitled to have those awards paid from the Government Insurance Fund.

A judgment will be entered affirming the orders of the Compensation Officer.