In re A. Edward HARNIK and William C. Thalheimer, d/b/a Philips Art Gallery, Bankrupts.

No. 72.

United States District Court
W. D. Arkansas,
Hot Springs Division.

July 27, 1962.

Richard W. Hobbs, Hot Springs, Ark., for Mrs. Selda Thalheimer.

R. Scott Campbell, Hot Springs, Ark., for trustee in bankruptcy.

JOHN E. MILLER, Chief Judge.

On February 2, 1962, A. Edward Harnik and William C. Thalheimer, d/b/a Philips Art Gallery, filed joint petitions asking that they, as individuals, and the partnership be adjudged to be bankrupts within the purview of the Bankruptcy Act, and on said date were duly adjudged a bankrupt.

On February 23, 1962, the first meeting of the creditors was held. The Referee's notes of the hearing, inter alia, recite:

"A turnover order is to be served on Richard Hobbs, attorney for Selda Thalheimer, directing that she return the jewelry referred to in the chattel mortgage listed on Schedule A-2."

In accordance with the statement, the following order was entered:

"TURNOVER ORDER

"At Little Rock, Arkansas, this 26th day of February, 1962.

"It appearing to the court that Selda Thalheimer has in her posses-sion certain jewelry, referred to in Schedule A-2 of the schedules of the above bankrupt, which is rightfully and legally property of the bankrupt estate; that same should be forthwith turned over to Earl Mander [Mazander], trustee in the above entitled bankrupt estate; and the court being well and sufficiently advised and no adverse interests appearing, it is by the court

"ORDERED, That Selda Thalheimer be, and she hereby is, directed to turn over to Earl Mander [Mazander], Trustee in Bankruptcy, all of the jewelry now in her possession, which property is referred to in Schedule A-2 of the schedules of this bankrupt."

On the same date the order was entered, a copy of same was mailed to Mr. Hobbs, the attorney of record for Mrs. Thalheimer, and she promptly complied with the order. The court fixed March 15, 1962, as the date for public auction of the assets of the bankrupt. On that date Mr. Hobbs telephoned the Referee, who was in Jonesboro, Arkansas, and requested that the Referee instruct the Trustee not to sell the jewels mentioned in the turnover order and to give Mrs. Thalheimer an opportunity to be heard on her claimed ownership. The Referee was of the opinion that the claimant, petitioner here, had not used due diligence in attacking the turnover order in that she had deferred attacking the turnover order from February 26 until March 15, and in the meantime had complied with the order, but not wishing to be arbitrary and in view of the fact that Mrs. Thalheimer had not testified, the Referee instructed the Trustee as requested by Mr. Hobbs. At the same time the Referee requested Mr. Hobbs to file during the next week such petition as he might desire to obtain a hearing on the claim to the jewels of Mrs. Thalheimer. Instead of filing the petition as directed, the Trustee on March 19, 1962, filed a petition for an order authorizing him to abandon all title to the property covered by the turnover order and to disclaim

the same. On the same date that the petition of the Trustee was received by the Referee, the date of April 2 was fixed for a hearing on the matter, and a copy of the letter fixing the date for a hearing on the petition was furnished to Mr. Hobbs. On the date of the hearing Mr. Hobbs was present but Mrs. Thalheimer was absent. The record does not reflect what was done on April 2, 1962, but on April 6, Mrs. Thalheimer through her attorney filed a petition to set aside the turnover order, and on April 9 the Referee advised Mr. Hobbs that he desired that Mrs. Thalheimer be present at the hearing on the two petitions, and fixed June 21 as the date for the hearing on the petition of the Trustee and also on the petition of Mrs. Thalheimer.

At the hearing the Trustee appeared in person and by his attorney, and Mrs. Thalheimer appeared in person and by her attorney. Testimony was heard, and on June 28, 1962, the Referee filed a memorandum opinion and entered an order dismissing the petition of Selda Thalheimer and also the petition of the Trustee. On the same day a copy of the opinion and order were mailed to the attorney for Mrs. Thalheimer and to the attorney for the Trustee.

The order further provided that the Trustee should have until on or before July 17 to submit to the court an acceptable private offer for the jewelry, and "failing this, shall forthwith contact the auctioneer for public auction of said jewels under the control of the court."

The petitioner is the wife of William C. Thalheimer, one of the bankrupts. Apparently no testimony was introduced by anyone at the first meeting of the creditors on February 23, 1962, but Mr. Hobbs, the attorney for the petitioner, was present. The summary of debts and assets that was on file disclosed that the bankrupt owed a total of $124,914.88 and with assets of only $23,391.82. Schedule A–2 referred to in the turnover order disclosed that the petitioner was in possession of jewelry valued at $2,834.01, as described in "chattel mortgage given Selda Thalheimer by Philips Art Gallery,

a partnership, dated December 18, 1961, as security for total loans to partnership in the form of cash in the amount of $8,500.00." The instrument, sometimes referred to as "chattel mortgage" or "financing statement," had been filed for record on January 8, 1962, and the adjudication of bankruptcy was made on February 2, 1962.

On July 9, 1962, the attorney for the claimant mailed to the Referee at Little Rock, Arkansas, a petition for review in which he alleged that the original turnover order was invalid and should have been set aside because of the order having been entered without notice to the petitioner, or without the right to interpose any objections to the issuance of the said turnover order and without any evidence being presented to the Referee as to whether or not the bankrupt was insolvent at the time the lien was obtained and without any objections having been filed by any of the creditors of the bankrupt.

The petitioner further alleged that the dismissal of the petition of the Trustee to abandon said property was erroneous in that no objections had been filed by any of the creditors of the bankrupt with respect to the petition for leave to abandon the said property, and for the further reason that $5,300 of the petitioner's money was used by the bankrupt to redeem merchandise prior to its adjudication of bankruptcy, and said merchandise became assets of the bankrupt and passed to the Trustee and were sold and the moneys received for the use and benefit of the creditors of the bankrupt.

That the said order was erroneous in that neither the Trustee, nor anyone else, presented any evidence to the court alleging the insolvency of the bankrupt at the time the possessory lien was given the petitioner, and no allegations were ever made as to any insolvency and no allegations of fraud have ever been interjected, nor has there been any proof with respect to such.

In his memorandum opinion the Referee discussed and considered the allegations made by the petitioner and the

Trustee in their petitions to set aside the turnover order. An examination and study of the opinion in connection with the testimony that was heard by the Referee is convincing that the findings and conclusions of the Referee are abundantly supported by the testimony and applicable law. Thus, if the petition to review the order of June 28, 1962, had been filed in time, the court would be required to adopt and confirm it.

As stated above, the petition for review was mailed to the Referee on July 9, 1962, but no filing fee accompanied the petition, which was received by the Referee on July 11. Immediately upon receipt of the petition, the Referee wrote the attorney for the claimant as follows:

"Dear Mr. Hobbs:

"I am this date, July 11th, in receipt of your Petition for Review (original only). Please advise if you desire to pursue this in view of the fact that the Petition was not filed with the Referee within ten days of the entry of the order complained of. Also, if you desire to go further, you will forward your check in the sum of $10.00, which is the statutory fee for filing a petition for review. You will also file a pleading designating the record you wish to be embraced on review."

Mr. Hobbs, upon receipt of the letter from the Referee, on July 12 wrote the Referee as follows:

"Dear Judge:

"This will acknowledge receipt of your letter of July 11 and I am enclosing herewith the original and one copy of a petition asking you to, within your discretionary powers, to consider the petition as having been filed in time or granting an extension for filing the same due to the circumstances involved.

"I am enclosing herewith a check of this office in the sum of $10.00 to cover the statutory fee.

"In the petition for review you will note that I have asked you to certify to the U. S. District Court to transmit to the clerk of the said court the record concerning all proceedings having to do with or in any manner bearing upon the matter in question and I assume that this will satisfy the statute. If you desire that I file a separate pleading designating the contents of the record to the court, I will, of course, be happy to do so."

The records show that the $10.00 check was received and credited on July 13, 1962.

On the same date, July 13, 1962, the claimant filed "Petition to Allow Extension of Time for Filing of Petition for Review," in which she alleged:

" * * * the order from which the petition of review is sought was entered on the 28th day of June, 1962, but was not received in the office of the attorney for petitioner until the 2nd day of July, 1962.

"WHEREFORE, your petitioner respectfully requests that Your Honor consider the petition as having been filed in accordance with the bankruptcy statutes in regard to the time element and that the extension be granted."

The Referee considered the petition for extension of time, and on July 16, 1962, filed and served his memorandum opinion and order. In the concluding paragraphs of the memorandum opinion the Referee stated:

"There being no petition (within ten days of the entry of the Order) for an extension for the period in which to file a petition, and the petition for review not being filed within said ten-day period, I take it that the Bankruptcy Court has no authority to order an untimely petition to be entered as being timely filed.

"The case will, however, be processed to the District Court, and the ultimate decision on this point will be determined by the District Judge.

"At Little Rock this 16th day of July, 1962."

On the same day the following order was entered:

"In accordance with Memorandum Opinion of this date, the petition of Selda Thalheimer for the Court to consider her petition for review as timely filed, is denied."

On July 20, 1962, the Referee certified the entire record to this court, and the record was filed on the next day, July 21, 1962.

Rule 6(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides:

"In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included, unless it is a Sunday or a legal holiday, in which event the period runs until the end of the next day which is neither a Sunday nor a holiday."

The order sought to be reviewed was entered on Thursday, June 28, 1962, and the first day of the ten-day period was Friday, June 29. Thus, the tenth day would fall on Sunday, July 8, which under the rule would not be counted, making the ten-day period in which a petition for review may be filed expire at the close of business on Monday, July 9. The petition for review was mailed to the Referee sometime during the day of July 9, but was not received by the Referee until Wednesday, July 11, on which date someone marked the petition as filed, but later the filing mark showing that the petition was filed on July 11 was stricken and a notation was made that the filing fee was paid on Friday, July 13.

Subsequent to the certification of the record by the Referee, the petitioner submitted to this court what she has designated as "Petition for Court to Review Order of Referee," in which she alleged:

"2. That the petitioner's attorney did not receive a copy or notice of the entry of the said memorandum opinion and order of the referee until the 2nd day of July, 1962; that the petitioner did then file with the said referee a petition for review, the same having been filed on the 11th day of July, 1962; that the petitioner did, by proper motion and petition, appeal to the said referee to consider and allow an extension of time for the filing of the petition for review in view of the foregoing facts and that the said referee did refuse to consider the petition for review on the ground that a period of more than ten days had elapsed from the entry of the memorandum opinion referred to herein before a petition for review was filed with the referee, but that said referee did certify to this court said petition and declined to consider the petition for review.

"3. That based upon the inherent jurisdiction of this court to consider such petition and in view of the circumstances set forth, the petitioner believes that she is entitled to have a review of the decision and order of the referee in order that justice may be done."

In the accompanying brief, petitioner in support of her contentions stated:

" * * * it is thoroughly established that the district judge can proceed to review such an order on his own initiative if he sees fit to do so and, therefore, it is immaterial whether the petitioner has a clear right to review or not if the district judge sees fit to entertain the application. This section further states that a statutory provision for a right of review by timely petition to the referee is no restriction on the judge's power of review and there is no time limitation on the power of a judge if the estate is still open, but that the district judge will not take such action if there has been a long delay amounting to laches."

The petitioner in her brief refers to Volume 8 of Remington on Bankruptcy, and states:

"In the '62 Pocket Parts, Vol. 8, concerning Section 3406 and Section 3407, are several cases cited in the year 1960 to the effect that regardless of whether the petition was filed within the statutory time or whether a petition for extension was filed within the statutory time, the district judge has inherent power to review an order of the referee if it appears that the referee was in error and that the better policy is to entertain the review so that inherent justice may be done, especially when the time element amounts to just a few days."

Prior to July 14, 1960, Sec. 39, sub. c of the Bankruptcy Act of 1938, as amended, 11 U.S.C.A. § 67, sub. c, read as follows:

"A person aggrieved by an order of a referee may, within ten days after the entry thereof, or within such extended time as the court may for cause shown allow, file with the referee a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who were represented at the hearing. Such petition shall set forth the order complained of and the alleged errors in respect thereto. Upon application of any party in interest, the execution or enforcement of the order complained of may be suspended by the court upon such terms as will protect the rights of all parties in interest."

On July 14, 1960, Public Law 86–662, 2d Sess., 86th Congress, 74 Stat. 528, 11 U.S.C.A. § 67, sub. c (1961 Supp.), became effective, and reads as follows:

"That subdivision c of section 39 of the Bankruptcy Act (11 U.S.C. 67c) is amended to read as follows:

" 'c. A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court *upon petition filed within such tenday period* may for cause shown allow, file with the referee a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who were represented at the hearing. Such petition shall set forth the order complained of and the alleged errors in respect thereto. *Unless the person aggrieved shall petition for review of such order within such ten-day period, or any extension thereof, the order of the referee shall become final.* Upon application of any party in interest, the execution or enforcement of the order complained of may be suspended by the court upon such terms as will protect the rights of all parties in interest.' "

The court has underlined the changes or amendments made by the Act of July 14, 1960, to the original Sec. 39, sub. c of the Act.

The report of the Conference Committee, Senate Report No. 1689, 1960 U. S. Cong. & Adm. News, pp. 3194–3197, states on page 3195 that:

"The bill amends section 39c so as to make it clear that a petition for review must be filed within the prescribed 10-day period or within such extended time as the court may allow upon petition for extension itself filed within such 10-day period."

On page 3196 in the explanation of the provisions of the bill, the Committee said:

"Uncertainty as to the finality of a referee's order now exists because of the holdings of some courts that a bankruptcy court may entertain an untimely petition for review, even in the absence of an extension of time. In view of this an amendment to section 39c is needed that will fix a definite period of time within which an application for review must be filed. The bill would amend section 39c so as to make it clear that the petition for review must be filed within the prescribed 10-day period

or within such extended time as the court may allow upon petition for extension filed within such 10-day period."

In 2 Collier on Bankruptcy, 14th Ed., Sec. 39.01, at page 83 the author states:

"Under this prior wording the Supreme Court of the United States had held in Pfister v. Northern Illinois Finance Corp., 317 U.S. 144 (1942) that there was no limitation upon the discretion of the bankruptcy court to entertain a petition for review after the expiration of the 10 day period. The 1960 amendment now makes it clear that a petition for review must be filed within the prescribed ten day period or within such extended time as the court may allow upon petition for such extension, itself filed within such ten day period."

In the Matter of Victor P. Danenza, Bankrupt, (E.D.N.Y.1962), 200 F.Supp. 694, the court at page 695 said:

"Prior to the adoption of the above quoted amendment, it had been held that the District Court had discretion to allow the filing of a petition after the lapse of ten (10) days from the entry of the referee's order. Pfister v. Northern Illinois Finance Corp., 1942, 317 U.S. 144, 63 S.Ct. 133, 87 L.Ed. 146. In the Pfister case the Supreme Court held that Section 39, sub. c, placed a time limitation upon the right of the aggrieved party to a review, but not on the power of the Court to extend the limitation. The statement submitted by the Senate Judiciary Committee to Congress with the proposed 1960 amendment stated in effect that the amendment was sought to overrule the Pfister decision (Senate Report No. 1689, 1960 U. S. Cong. & Adm. News, pp. 3194–3197). The Court must conclude that Congress amended Section 39, sub. c, for the purpose of limiting the right of the District Court to extend the time for review unless a petition for the extension was filed within the ten-day period. All of the authorities upon which petitioner relies were decided prior to the 1960 amendment and therefore must be deemed overruled by the action of the Congress.

"There is no requirement in the statute that notice of entry of the referee's order be served upon the bankrupt by either the referee or the objecting creditors. If the default is caused by the absence in the statute of such a requirement, the defect is one which only Congress can remedy. Under the circumstances, however, the petitioner is not now in a position to complain that he received notice of entry of the order only after the lapse of the statutory ten-day period for appeal. Since no petition was filed with the Court within ten days from the entry of the referee's order requesting an extension of time to file a petition for review, the application must be denied."

See, also, In Re Lawson, (W.D.Va.1962) 201 F.Supp. 710.

The present statute requires that the petition for review be filed within ten days after the entry of the order sought to be reviewed or any extensions thereof filed within such ten-day period. The petitioner contends that the petition for review was filed July 11, although the filing fee was not mailed until July 12 and was not received by the Referee until July 13. It may be conceded that since the petition was received by the Referee on July 11, although unaccompanied by the filing fee, it should be treated as filed on that date. But the fact remains that the order sought to be reviewed was entered June 28, and the ten days allowed by the statute for the filing of the petition expired at the close of business on July 9.

The claim of petitioner that her attorney did not receive notice of the entry of the order until July 2 is refuted by copy of letter dated the same day the order was entered addressed to the attorney for the petitioner and to the attorney for the Trustee, with which was enclosed a copy of the memorandum and order of that date. However, there is no requirement in the statute that notice

of entry of the Referee's order be served upon the bankrupt or any creditor. The statute provides, "unless the person aggrieved shall petition for review of such order within such ten-day period, or any extension thereof, the order of the referee shall become final." The order became final at the close of business on July 9, 1962.

The mailing of the petition on July 9 is not a filing of the petition as required by the statute, and petitioner does not so contend.

In United States v. Lombardo, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1916), the court at page 76 of 241 U.S. at page 509 of 36 S.Ct. said:

"'* * * The word "file" was not defined by Congress. No .definition having been given, the etymology of the word must be considered and ordinary meaning applied. The word "file" is derived from the Latin word "filum," and relates to the ancient practice of placing papers on a thread or wire for safe keeping and ready reference. Filing, it must be observed, is not complete until the document is delivered and received. "Shall file" means to deliver to the office and not send through the United States mails. Gates v. State, 128 N.Y. Court of Appeals, 221 [28 N.E. 373]. A paper is filed when it is delivered to the proper official and by him received and filed. Bouvier Law Dictionary; White v. Stark, 134 California 178; Westcott v. Eccles, 3 Utah, 258 [2 P. 525]; In re Van Varcke, [D.C.] 94 Fed.Rep. 352; Mutual Life Ins. Co. v. Phiney, [48 U.S.App.D.C. 78] 76 Fed.Rep. 618. Anything short of delivery would leave the filing a disputable fact, and that would not be consistent with the spirit of the act.'"

The above statement has been approved by many subsequent decisions.

The petition for review was not filed with the Referee within the ten-day period required by the statute. Neither was a petition filed within the ten-day period permitted by the statute for an extension of time. Therefore, the court is precluded from considering the petition for review, and an order is being entered today confirming and approving the turnover order sought to be attacked by the petitioner.