**Joseph ABADI, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 90–CV–72794–DT.**

United States District Court, E.D. Michigan, S.D.

Jan. 27, 1992.

John C. Griffin, Jr., Harper Woods, Mich., for plaintiff.

Mark D. Lansing, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION
## AND ORDER

ZATKOFF, District Judge.

This matter is before the Court on defendant's Fed.R.Civ.P. 56(b) motion for summary judgment. For the reasons stated below, defendant's motion is granted.

## I. BACKGROUND

Plaintiff Joseph Abadi claimed a business loss deduction of $200,460.00 on his 1978 individual federal income tax return. The deduction arose from his investment of $52,000.00 in November of 1978 in a tax shelter named West Liberty Coal Program.

In March of 1980, the Internal Revenue Service began an audit of plaintiff's 1978 return. On November 24, 1981, plaintiff executed a Form 872 "Consent to Extend Time to Assess Tax."[1] It provided that any federal income tax determined due for periods ending December 31, 1978 could be assessed against plaintiff until June 30, 1983. Moreover, it allowed the IRS to further extend the time for assessment by sending the plaintiff a Notice of Deficiency on or before that date. A notice was is-

---

**1.** Generally, the IRS is required to assess any tax allegedly due within three years after a return is filed. 26 U.S.C. § 6501(a). Section 6501(c)(4), however, permits the IRS and individual taxpayers to agree in writing to assessments after such time.

sued and mailed on June 29, 1983. On November 18, 1983, the IRS assessed the tax deficiency asserted for the 1978 taxable year at $73,185.00, plus interest of $48,-413.65 as of that date.[2]

The IRS subsequently levied upon several of plaintiff's bank accounts. As a result, on October 28, 1983, plaintiff made payments to the IRS in the amount of $173,-318.19. On December 16, 1985, the IRS assessed additional interest in the amount of $27,002.26 plus a failure to pay tax penalty of $8,416.27. Later, on February 3, 1986, interest was again assessed against plaintiff for $3,459.61.[3]

Sometime later, plaintiff mailed a claim for refund for overpayment of taxes. The envelope containing the claim is postmarked November 10, 1985. The claim was disallowed. The plaintiff thus filed suit in this Court seeking relief.

Defendant has responded by filing the instant motion for summary judgment. Defendant urges that plaintiff's claim for refund is barred pursuant to 26 U.S.C. § 6511, which requires that such claims be filed within 3 years from the time the return is filed or 2 years from the time the tax was paid, whichever is later.[4] Thus, according to defendant, this Court is without jurisdiction to entertain this matter as the defendant United States has not waived its sovereign immunity.

## II. OPINION

### A. Standard of Review

■ Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law.

*Blakeman v. Mead Containers*, 779 F.2d 1146 (6th Cir.1986); Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *United States v. Diebold*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Cook v. Providence Hosp.*, 820 F.2d 176, 179 (6th Cir.1987); *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). In deciding a motion for summary judgment, the Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. Although summary judgment is disfavored, this motion may be granted when the trial would merely result in delay and unneeded expense. *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *A.I. Root Co. v. Computer/Dynamics, Inc.*, 806 F.2d 673, 675 (6th Cir.1986). Where the nonmoving party has failed to

---

2. The Notice set forth a tax deficiency in the amount of $73,185.00 for the taxable year ending December 31, 1978, as well as an $11,124.00 deficiency for the 1975 taxable year and a $2,242.00 deficiency for the 1976 taxable year. The Notice was sent by certified mail to the plaintiff at 20558 Ferguson, Detroit, Michigan 48235, his last known address with respect to the IRS.

3. Defendant claims that at the time of the October, 1985 payment, plaintiff's outstanding tax liability, including the total interest and failure to pay penalty, was known. It thus characteriz-

es the December of 1985 and February of 1986 assessments as ministerial acts of assessing previously computed liability. This liability, according to the defendant, was paid in full via the October of 1985 payment.

4. No suit or proceeding can be maintained in any court for the recovery of any Internal Revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, until a claim for refund has been duly filed under 26 U.S.C. § 6511. 26 U.S.C. § 7422(a).

present evidence on an essential element of their case, they have failed to meet their burden and all other factual disputes are irrelevant; thus, summary judgment is appropriate. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (Footnote omitted)).

### B. Plaintiff's Claim for Refund Was Untimely As A Matter of Law

■ The federal courts exercise jurisdiction over lawsuits for refund of federal taxes pursuant to 28 U.S.C. § 1346(a)(1). This section, together with 26 U.S.C. § 7422(a), constitutes a waiver by the United States of its sovereign immunity with respect to refund suits by taxpayers to recover internal revenue taxes alleged to have been erroneously or illegally assessed or collected. *Miller v. United States*, 784 F.2d 728, 729 (6th Cir.1986). It provides that no refund suits shall be maintained in federal court until a claim for refund has been duly filed with the IRS. 26 U.S.C. § 7422(a). The taxpayer has the burden of demonstrating the existence of federal jurisdiction. *Miller*, 784 F.2d at 729 (citation omitted). Thus, this Court must initially determine whether plaintiff has established that his claim for refund, postmarked November 10, 1985, was timely filed.[5]

■ As noted above, 26 U.S.C. § 6511 sets the period of limitation on filing claims for refunds. It requires that such claims be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever is later. Here, the later period is 2 years from the time the tax was paid. The issue thus before the Court is whether plaintiff's October 28, 1983 remittance to the IRS constituted payment within the meaning of section 6511. If so, plaintiff's November 10, 1985 claim for refund is untimely, and this Court is without jurisdiction to entertain this action.

In urging that his claim for refund is not time barred, plaintiff correctly observes that on two occasions subsequent to his October, 1983 remittance—December 16, 1985 and February 3, 1986,[6] the IRS assessed additional interest as well as a failure to pay penalty for his 1978 deficiency. Plaintiff contends that it is these latter assessments against which the section 6511 time period is measured.[7] This Court is not persuaded.

■ In *Ameel v. United States*, 426 F.2d 1270 (6th Cir.1970), the Sixth Circuit specifically held that a remittance made prior to assessment can be a payment of tax under § 6511. In determining what constitutes payment, the court enumerated several factors:

> (1) a remittance is not *per se* payment of the tax; (2) a remittance that does not satisfy an assessed tax liability should

5. The general requirement for the filing of claims is the "physical delivery rule." That is, a claim is "filed" when the claim is "delivered and received." *United States v. Lombardo*, 241 U.S. 73, 76, 36 S.Ct. 508, 509, 60 L.Ed. 897 (1916). However, 26 U.S.C. § 7502 was enacted as a remedial provision to alleviate inequities arising from differences in mail delivery from one part of the country to another. This section provides that if any document which must be filed within a prescribed period which is after that period "delivered by the United States mail" to the office where it is to be filed, the date of the U.S. postmark stamped on the envelope "shall be deemed the date of delivery...." 26 U.S.C. § 7502(a)(1). Thus, plaintiff's claim for refund was "filed" on November 10, 1985.

6. On December 16, 1985, the IRS assessed interest in the amount of $27,002.26, plus a failure to

pay penalty equaling $8,416.27. On February 3, 1986, additional interest was assessed in the amount of $3,459.61.

7. In so arguing, plaintiff cites to several circuits which have created a *per se* rule that there simply can be no payment of taxes prior to assessment. *See United States v. Dubuque Packing Co.*, 233 F.2d 453 (8th Cir.1956); *Thomas v. Mercantile Nat'l Bank*, 204 F.2d 943 (5th Cir. 1953). Thus, according to plaintiff, he had until December 16, 1987, at the very latest, to file a claim for refund. Plaintiff's analysis, however, ignores the pre-remittance assessment of $121,598.65 on November 18, 1983. Consequently, even if this Court followed the above-cited authority, the maximum amount of refund to which the plaintiff would be entitled is $38,878.14, plus interest.

not be treated as the "payment" of a tax; and (3) an essential factor in "payment" before assessment is the satisfaction or discharge of what the taxpayer deems a liability.

*Id.* at 1273 (quoting 10 S. Mertens, *Law of Federal Income Taxation*, § 58.27 at 79 (1964)). *Ameel* thus makes clear that formal assessment is only one factor to be considered in deciding whether a remittance is a payment. Others include when the tax liability is defined, the taxpayer's intent in remitting the money, and how the IRS treats the remittance upon receipt. *See e.g., Ewing v. United States*, 914 F.2d 499, 503 (4th Cir.1990).

Plaintiff's deposition testimony clearly indicates that his 1985 remittance was intended to discharge what he deemed a tax liability.[8] That liability, moreover, was defined as of the November 18, 1983 assessment, almost two years before plaintiff's remittance. The subsequent assessment of the previously computed interest and failure to pay penalty does not change the character of the earlier payment. Finally, the IRS's Form 4340 Certificate of Assessments and Payments expressly describes plaintiff's remittance as a "payment." Given the above, this Court holds as a matter of law that plaintiff's October 28, 1985 remittance was a "payment" within the meaning of 26 U.S.C. § 6511. Plaintiff's November 10, 1985 claim for a refund is thus untimely.

## III.  CONCLUSION

For all the reasons set forth above, defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

---

**8.** During a September 27, 1991 deposition, plaintiff stated:

> Q:  In order to release the levy on Lyons you wrote a check out for $173,318.19.
> A:  Yes.
> Q:  No money was taken out of Lyons' account pursuant to the levy?  You wrote a check out yourself?
> A:  Oh, yes.

> Q:  Is that right?
> A:  That is true.  I wanted to pay my bill and didn't want to be forced into it.  I would rather pay it willingly.
> Q:  To set the sequence of events, your account gets levied and you wanted to pay the bill voluntarily so you wrote out a check?
> A:  Yes.

Deposition of Joseph Abadi, pg. 61.