[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
04/27/99
THOMAS K. KAHN
CLERK

_____

No. 98-2442
Non-Argument Calendar

_____

D.C. Docket No. 4:94-CR-4045-WS
D.C. Docket No. 4:97-CV-422-WS


BRADY LAVICK ADAMS,

Petitioner-Appellant,

versus


UNITED STATES OF AMERICA,

Respondent-Appellee.


_____

Appeal from the United States District Court for the
Northern District of Florida

_____

**(April 27, 1999)**

Before COX, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Petitioner-Appellant Brady Adams ("Adams"), a federal prisoner proceeding pro se, appeals the district court's dismissal of his motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. After review, we affirm.

## I. Procedural History

On April 18, 1995, Adams was sentenced to a term of life imprisonment and a consecutive term of 60 months' imprisonment for his convictions of kidnaping, carrying a firearm during a crime of violence, and being a convicted felon in possession of a firearm. On April 24, 1995, Adams filed a notice of appeal of his conviction and sentence. In an opinion dated May 29, 1996, this Court affirmed Adams' conviction and sentence, and on August 2, 1996, the mandate issued affirming Adams' conviction and sentence.

Adams then petitioned the Supreme Court for a writ of certiorari. The Supreme Court denied certiorari on November 4, 1996.

This Court received official notice of the denial of certiorari on November 6, 1996, and in an order dated November 7, 1996, this Court communicated the denial of certiorari to the district court. The district court entered this communication on the docket as the "mandate" of this Court on November 12, 1996.

Subsequently, Adams filed a motion to vacate his sentence under § 2255 alleging deficiencies in the indictment, ineffective assistance of counsel, and

prosecutorial misconduct. Adams' motion to vacate was executed and dated November 6, 1997. The district court received the motion to vacate on November 12, 1997. In his motion, Adams listed the date that the Supreme Court denied <u>certiorari</u> as November 6, 1996. However, November 6 was the date that this Court received notice of the denial of <u>certiorari</u> from the Supreme Court.

In an order dated December 15, 1997, the magistrate judge recommended that the district court dismiss Adams' motion to vacate as untimely. The magistrate reasoned that Adams' conviction and sentence became final when this Court issued the mandate affirming Adams' conviction and sentence on August 2, 1996. Therefore, according to the magistrate, Adams' motion to vacate was not filed within the one-year limitations period under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. 8 U.S.C. § 2255.

The district court dismissed Adams' motion as untimely but for slightly different reasons than the magistrate judge recommended. Without extensive discussion, the district court found that Adams' motion was untimely because it was not filed within one year of the Supreme Court's denial of <u>certiorari</u> on November 4, 1996.

On appeal, Adams argues that the district court erred by dismissing his § 2255 motion as untimely.

## II. Discussion

Except under other circumstances not at issue in the instant appeal, the AEDPA requires that a § 2255 motion to vacate sentence be filed within one year of when the "judgment of conviction" becomes final.[1] In order to determine whether Adams' § 2255 motion was timely filed, we must determine (1) when the motion was filed and (2) when Adams' "judgment of conviction" became final.

### A. The "Mailbox Rule" for Prisoner Filings

A <u>pro se</u> prisoner's notice of appeal is considered to be filed on the date that the prisoner delivers the notice to prison authorities for mailing. <u>Houston v. Lack</u>,

---

[1] The relevant part of § 2255 provides:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--
(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

4

487 U.S. 266, 275 (1988). This same "mailbox rule" governs the filing date for a complaint by a pro se prisoner under § 1983 or the Federal Tort Claims Act. Garvey v. Vaughn, 993 F.2d 776, 783 (11th Cir. 1993). Other circuits have applied this rule to a pro se prisoner's filing of a motion to vacate. See, e.g., Sonnier v. Johnson, 161 F.3d 141, 144 (5th Cir. 1998). For the same reasons that this Court has applied the mailbox rule to other filings by pro se prisoners, this Court holds that a pro se prisoner's motion to vacate is deemed filed the date it is delivered to prison authorities for mailing.

Under the mailbox rule, Adams' motion to vacate was filed when he delivered the motion to prison authorities for mailing on November 6, 1997. Indeed, because the motion to vacate was not signed or executed until November 6, 1997, this date is the earliest date on which his motion could be considered filed.

Adams contends that his motion to vacate should be considered filed on November 3, 1997, which is the date that he delivered his motion to the prison authorities for photocopying. Adams contends that just as he is unable to control when prison officials mail his pleadings, he is unable to control when the officials make necessary photocopies of his pleadings before mailing. Thus, under the reasoning of Houston, Adams contends that he should not be penalized for a delay in filing that was beyond his control.

5

This Court declines to extend the mailbox rule to a photocopying rule. As Adams argues, the mailbox rule from Houston is based on the notion that a prisoner "has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay." 487 U.S. at 271. However, none of this Circuit's cases applying the mailbox rule from Houston has extended the rule beyond issues relating to a prison inmate's lack of direct access to the mail. See, e.g., Sanders v. United States, 113 F.3d 184, 187 (11th Cir. 1997) (reasoning that prison officials' delay in forwarding the district court's denial of a § 2255 motion justified the pro se prisoner's delay in filing an appeal of the district court's order); Garvey 993 F.2d at 782.

Thus, under the mailbox rule, Adams' motion to vacate was filed on November 6, 1997, which is the date that he signed, executed, and delivered his petition to prison authorities for mailing. Accordingly, the only remaining issue becomes when Adams' conviction became final for the purposes of applying the AEDPA's limitations period.

**B. The AEDPA's Limitations Period**

The AEDPA sets a one-year limitations period for federal or state prisoners to seek federal habeas review, which includes motions to vacate sentence under 28

U.S.C. §§ 2254 & 2255.  28 U.S.C. § 2244(d) (applying the limitations period to state prisoners); 28 U.S.C. § 2255 (applying the limitations period to federal prisoners).  The one-year limitations period for § 2255 motions by federal prisoners runs from the latest of (1) "the date on which the judgment of conviction becomes final," (2) if the government unlawfully prevents the filing of a § 2255 motion, the date on which the impediment to making such a motion was removed, (3) if a right asserted in the motion is a new right recognized by the Supreme Court and made applicable retroactively to cases on collateral review, the date on which the new right is recognized by the Supreme Court, or (4) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2255.  However, § 2255 does not specify when a "judgment of conviction becomes final."

The circuits have taken two general approaches to determining when a judgment of conviction becomes final.  The Third and Tenth Circuits have held that a judgment of conviction becomes final when the Supreme Court denies certiorari or the time expires for seeking certiorari.  Kapral v. U.S., 166 F.3d 565 (3rd Cir. 1999);[2] United States v. Lacey, 162 F.3d 1175, No. 98-3030 (10th Cir.

---

[2] The court in Kapral clarified that where a defendant does not pursue a direct appeal, the conviction becomes final when the time expires for filing a direct appeal.  166 F.3d at 575.

Oct 27, 1998). In <u>Kapral</u>, the Third Circuit reasoned "it is axiomatic that direct review of a state court criminal judgment includes the right to seek <u>certiorari</u> review in the United States Supreme Court." 166 F.3d at 575. The Third Circuit further reasoned that the AEDPA did not reflect congressional intent to treat state convictions differently than federal convictions. <u>Id.</u> Likewise, in <u>Lacey</u>, the Tenth Circuit relied on a line of cases in which the Supreme Court reasoned that a conviction becomes "final" in the context of retroactively applying new constitutional rules when <u>certiorari</u> is denied or the time to apply for <u>certiorari</u> has expired. <u>Lacey</u>, 162 F.3d 1175 (citing <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321 n.6 (1987)).

Taking a different approach, the Seventh Circuit has concluded that, if the defendant does not file a petition for <u>certiorari</u>, a conviction becomes final when the mandate issues from the court of appeals. <u>Gendron v. United States</u>, 154 F.3d 672, 674 (7th Cir. 1998). First, the Seventh Circuit reasoned that the Supreme Court's definition of "final" in the retroactivity context does not determine when a conviction becomes "final" in the context of the AEDPA. <u>Id.</u> at 673-74. Next, the Seventh Circuit reasoned that § 2244(d), which establishes the one-year limitations period for § 2254 motions, expressly provides that the limitations period does not begin to run until the completion of the state appellate process including a petition

8

for discretionary review to the state's highest court.  Id. at 674.  According to the Seventh Circuit, the absence of such language in § 2255 reflects congressional intent to treat the two sections differently.  Id.  Therefore, the court held that "prisoners who decide not to seek certiorari with the Supreme Court will have the period of limitations begin to run on the date this court issues the mandate in their direct criminal appeal."  Id.

No circuit cases have adopted the rule, advanced by Adams, that a conviction does not become final until the court of appeals receives official notice of the Supreme Court's denial of certiorari.  Moreover, the single case cited by Adams, United States v. Bazemore, 929 F. Supp. 1567, 1570 (S.D. Ga. 1996), does not adopt such a rule.  In Bazemore, the court expressly reserved the question of when the defendant's judgment of conviction became final.  Instead of reaching this question, the court reasoned that the latest possible measure of when the defendant's conviction became final was when this Court "certified" the Supreme Court's denial of certiorari.  The court in Bazemore held that the defendant's motion was untimely even assuming that this latest possible date determined when the defendant's conviction became final.  Thus, the court did not need to identify the specific act that renders a conviction final.

In the instant appeal, this Court does not need to decide whether the AEDPA's one-year limitations period ran from the issuance of this Court's mandate on August 2, 1996 or the Supreme Court's subsequent denial of certiorari on November 4, 1996. Since Adams did not file his § 2255 motion until November 6, 1997, his motion was untimely under either date.

Instead, we hold only that the receipt by this Court of the Supreme Court's denial of certiorari does not govern when a "judgment of conviction becomes final" for the purposes of the AEDPA's one-year limitations period. None of the circuits has defined a final judgment of conviction with reference to the court of appeals' receipt of notice of the denial of certiorari. Conversely, two circuits have held that either the denial of certiorari, or the expiration of the time for filing certiorari, determines when a conviction becomes final. Indeed, even the Seventh Circuit's opinion in Gendron suggests the importance of when the Supreme Court denies certiorari. The Seventh Circuit's rule in Gendron that a conviction is final when the court of appeals' mandate issues applies only when the defendant does not seek certiorari which suggests a different definition of finality when the defendant files for certiorari. Without deciding whether the issuance of the mandate from the court of appeals ever renders a judgment of conviction final, this

10

Court holds that the receipt or certification by this Court of the denial of <u>certiorari</u> does not determine when a judgment of conviction becomes final.

Based on the foregoing, Adams' one-year limitations period for filing a motion to vacate began to run on November 4, 1996 at the latest.  Therefore, the district court properly concluded that Adams' motion to vacate was not timely filed on November 6, 1997.  Accordingly, we conclude that the district court correctly dismissed Adams' § 2255 motion.

**AFFIRMED.**