**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Wesley Lee BELL, Defendant.**

**No. CR. 98–00189–001.**

United States District Court,
S.D. Alabama,
Southern Division.

May 6, 2002.

Richard W. Moore, U.S. Attorney's Office, Mobile, AL, for Plaintiff.

## ORDER

HAND, Senior District Judge.

The defendant, Wesley Lee Bell, filed a motion (Docs. 35 and 36) pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. The United States filed a motion (Doc. 43) to dismiss Bell's § 2255 motion on the grounds that it is barred by the applicable statute of limitations. Upon consideration of the motion to dismiss, defendant's response in opposition thereto (Doc. 48) and all other pertinent portions of the record, the Court concludes that Bell's § 2255 motion is time-barred and due to be dismissed.

Bell was charged in October of 1998 in a one count indictment of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[1] A jury found Bell guilty on January 28, 1999, after this Court[2] precluded Bell from putting on a justification defense. Bell appealed on a single issue. The Eleventh Circuit affirmed the conviction and this Court's ruling that the defendant failed to establish a justification defense because there was no proof of imminent danger to the defendant at the time he was found in possession of the firearm. *United States v. Bell*, 214 F.3d 1299, 1301 (11th Cir.2000). Bell filed a writ of *certiorari* to the United States Supreme Court which was denied on January 8, 2001. *Bell v. United States* 531 U.S. 1098, 121 S.Ct. 828, 148 L.Ed.2d 710 (2001).

The statute of limitations applicable to Bell's claims is set forth in 28 U.S.C. § 2255, as modified by the Antiterrorism and Effective Death Penalty Act (AEDPA), *See,* Pub.L. No. 104–132, 110 Stat 1214. Specifically, § 2255 provides, in pertinent part:

A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final: ...

28 U.S.C. § 2255.

Bell's conviction became final on January 8, 2001, when the Supreme Court denied his writ of *certiorari.* Consequently, Bell's filing deadline for a § 2255 motion was January 7, 2002. *See, Wilcox v. Florida Department of Corrections,* 158 F.3d 1209, 1210 (11th Cir.1998) (calculated that the one-year statute of limitations ran from the April 24, 1996 effective date of AEDPA to April 23, 1997); *Goodman v. United States,* 151 F.3d 1335, 1337 (11th Cir.1998) (same); *United States v. Simmonds,* 111 F.3d 737, 745 (11th Cir.1997) (same). Bell did not file any post-conviction motions which would toll the statute of limitations.

Bell's § 2255 motion was received by the Court on January 14, 2002. The operative date for purposes of this case, however, is the date on which Bell placed the motion in the hands of the prison officials within the meaning of the "mail-

---

**1.** Bell was subsequently indicted on a new charge (18 U.S.C. § 1001, false statements) before he was sentenced in August of 1999 in the case at bar. *See, United States v. Bell.* Cr. No. 99–00031 (S.D.Ala.). The sentence in that case was run concurrently with the sentence in the gun case. Bell's petition does not challenge the false statement conviction.

**2.** Bell, in his § 2255 motion, erroneously cites Richard W. Vollmer, Jr. as the district court trial judge. *See, United States v. Bell,* 214 F.3d 1299 (11th Cir.2000).

box rule" as applied by the Eleventh Circuit to the filing of a § 2255 motion. *See, Adams v. United States*, 173 F.3d 1339 (11th Cir.1999). In *Adams*, the petitioner argued unsuccessfully that the "mailbox rule" should extend to the time the prisoner places his § 2255 motion with prison officials for photocopying. The Eleventh Circuit declined to "extend the mailbox rule to a photocopying rule." 173 F.3d at 1341. According to the Court, filing was perfected only when the prisoner "signed, executed, and delivered the petition to the prison authorities for mailing." *Id.* This rule is premised on the principle that a prisoner should not be penalized for a delay in filing that is beyond his control.

The United States submitted proof, by the affidavit of Hope Chance, that Bell placed the envelope containing his § 2255 motion in the prison's legal mailbox, at the earliest, on January 8, 2002, after the 6:30 a.m. routine pick-up time, and, at the latest, on the morning of January 9, 2002, before the 6:30 a.m. pick-up.[3] Ms. Chance verifies that Bell could not have placed the envelope in the prison's legal mailbox on or before January 7, 2002.

Bell does not dispute Ms. Chance's testimony, but contends that he "gave his U.S.C. § 2255 motion to counselor on '1–5–02' so that he could mail and put postage on their [sic], because Petitioner couldn't afford the stamps which was needed at that time." Bell's Response (Doc. 48) at ¶ 1. In what purports to be a statement by W.C. Holland[4], who identifies himself only as "Counselor Al," the following contention is made:

> Inmate Bell # 07171–003 asked this counselor to mail a piece of legal mail for him. The legal mail was mailed 2 days later at no expense to the inmate. Due to the Unit Manager not being available and being the only one having authority to issue the stamps the legal mail was delayed by one day.

*Id.* at Appendix 1. Apart from the fact that this statement is somewhat inconsistent with Bell's sworn statement,[5] it does not establish that Bell timely complied with the "mailbox rule" which was first established for prisoners in *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), and applied in *Adams, supra.*

The rationale set forth in *Houston* for this "mailbox rule" emanates from the fact

---

**3.** Ms. Chance is currently employed as the Assistant Inmate Systems Manager (ISM), and is familiar with the procedures of FCI Edgefield, the federal prison where Bell resides, for handling the legal mail of prisoners. Ms. Chance testified that the envelope in which Bell filed his § 2255 motion bears "our block stamp advising that we did not examine the contents of the envelope [and] a date of '1–9–02' ... which indicates that the inmate would have placed the envelope in our institution's legal mailbox by 6:30 a.m. on January 9, 2002." According to Ms. Chance, "[a]ll legal mail in the legal mailbox is picked up by 6:30 a.m. each day [and Bell] either placed the envelope in the legal mailbox on January 8, 2002, after the 6:30 a.m. run that day or the morning of January 9, 2002 before 6:30 a.m." Ms. Chance testified that "[t]he envelope could not have been placed in the legal mailbox on January 7, 2002, with a date on

the envelope of January 9, 2002 [because] [i]f the prisoner had placed the envelope in the legal mailbox on January 7, 2002, the envelope would have had a date of January 7 or 8 and not January 9, 2002."

**4.** The statement by W.C. Holland is dated "4–11–02" and is handwritten under a notorized statement by Bell, which is dated "4–10–02." Mr. Holland does not describe his employment status beyond identifying himself as Bell's "counselor." Nor is Mr. Holland's statement "[s]worn to and subscribed" as is the affidavit submitted by Ms. Chance.

**5.** Bell testifies in his sworn statement that "[t]he next day [he] ask his counselor did he mail his 28 U.S.C. § 2255 and my counselor stated that he had made a 'mistake' and left it in his office, but he would take care of it that same day." Bell's Response at Appendix 1.

that a *pro se* prisoner "cannot take steps other litigants take to monitor the processing of their notices of appeal [or other legal documents] and to ensure that the court clerk receives and stamps their notices of appeal before the 30–day deadline." *Houston*, 487 U.S at 270–71, 108 S.Ct. at 2382. The *Houston* court further reasoned:

> Worse, the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the *pro se* prisoner delivers his notice to the prison authorities, he can never be *sure* that it will ultimately get stamped "filed" on time. And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any *means of proving it,* for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on the date received. Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access—the prison authorities—and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

487 U.S at 271–72, 108 S.Ct. at 2382–83 (emphasis added). The Supreme Court acknowledged that the mailbox rule had been rejected in other contexts but distinguished those cases as having been "based

in part on concerns that it would increase disputes and uncertainty over when a filing occurred and that it would put all the evidence about the date of filing in the hands of one party." 487 U.S at 275, 108 S.Ct. at 2384, *comparing, United States v. Lombardo,* 241 U.S. 73, 78, 36 S.Ct. 508, 510, 60 L.Ed. 897 (1916).[6] In the *pro se* prisoner context, the *Houston* court concluded:

> These administrative concerns [expressed in *Lombardo* ] lead to the opposite conclusion here. The *pro se* prisoner does not anonymously drop his notice of appeal in a public mailbox—he hands it over to prison authorities who have *well-developed procedures for recording the date and time at which they receive papers for mailing* and who can readily dispute a prisoner's assertions that he delivered the paper on a different date. *Because reference to prison mail logs will generally be a straightforward inquiry,* making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one.

487 U.S at 275, 108 S.Ct. at 2384–85 (emphasis added). In other words, the *pro se* prisoner mailbox rule was justified only in the context of "well-developed procedures" pursuant to which a prisoner hands over his legal mail to the prison authorities for delivery and some record of the date and time of that delivery is maintained which serves as the proof advocated in *Houston* to avoid the uncertainty disdained in *Lombardo.*

The Eleventh Circuit in *Adams* refused to extend the "mailbox rule" "beyond issues relating to a prison inmate's lack of direct access to the mail." 173 F.3d at

---

**6.** *In Lombardo,* the Supreme Court held that, a rule permitting a filing to be "satisfied by a deposit in the postoffice at some distant place," would "result in confusion and con-

troversies; and we would have the clash of oral testimonies for the certain evidence of the paper in the files." 241 U.S. at 78, 36 S.Ct. at 510.

1341. The Eleventh Circuit specifically rejected Adams's contention that his § 2255 motion should be considered filed on the date he delivered his motion to prison authorities for copying. Instead, the *Adams* court held that the motion was not filed until "the date that [Adams] signed, executed and delivered his petition to prison authorities for mailing." *Id.*

 Bell invites this court to ignore the procedures established for mailing legal documents at F.C.I. Edgefield, where he resides, and, instead, to declare that he complied with the "mailbox rule" on the date when he allegedly handed his § 2255 motion to a counselor with no apparent authority to mail the document. Such an interpretation of the "mailbox rule" would amount to an extension of that rule in the nature sought and rejected by the Eleventh Circuit in *Adams*. This interpretation would also be inconsistent with the rationale expressed in *Houston*, which relied upon the "well-developed procedures for recording the dates and time at which [prison authorities] receive papers for mailing" and thereby provided a "bright-line rule, not an uncertain one." 487 U.S. at 275, 108 S.Ct. at 2384–85.

This Court must, therefore, reject Bell's interpretation of the "mailbox rule" and, instead, conclude that the date which controls in this case is the date on which Bell delivered his petition for mailing pursuant to the procedures established at F.C.I. Edgefield for handling legal mail for prisoners, a procedure by which the delivery date is documented in the "block stamp" placed on the envelope. Bell has not contested that the block stamp placed on his envelope at the time he delivered the petition for mailing pursuant to F.C.I. Edge-

field's procedures bore the date "1–9–02" which was two days after the statute of limitations had run.[7]

For the foregoing reasons, the Court concludes that Bell's § 2255 motion is barred by the applicable statute of limitations. It is therefore **ORDERED** that the United States's motion to dismiss Bell's § 2255 motion be and is hereby **GRANTED**.

---

7. *Cf., United States v. O'Kaine,* 971 F.Supp. 1479, 1480–81 (S.D.Ga.1997) ("*Houston v. Lack* placed the burden of proof for a *pro se* pleadings delivery date on the prison authorities, "who have the ability to establish the correct date through their logs" [but][i]n the instant motion, the Government makes no effort to show the motion's delivery date."), *quoting, Garvey v. Vaughn,* 993 F.2d 776, 781 (11th Cir.1993).