Day, J.
 

 It is the contention of plaintiff in error that under Section 710-98®, General Code, a claim for preference cannot be considered “filed,” until it is physically received by the Superintendent of Banks, or by a special deputy in charge of liquidation of the particular bank, and that since the claim of defendant in error was not received “on or before three months after the last publication of notice,” no duty reposed upon him to consider it.
 

 Defendant in error, however, contends that the requirements of the General Code have been complied with by depositing its claim for preference in the mails before the expiration of the time limit set by statute.
 

 Whether depositing of the preference claim in the
 
 *497
 
 mails before the last day provided by Section 710-98®, General Code, constitutes compliance with the statutory requirement is the question presented for our determination.
 

 Section 710-98®, General Code, provides: “No claim for preference shall be allowed by the superintendent of banks or approved by the court unless the same is verified by an affidavit or affidavits fully disclosing all facts upon which said claim is based. All such claims must be filed with the superintendent of banks on or before three months after the last publication of notice required by the second sub-paragraph of section 710-90 of the General Code, and if not so filed the owner or owners thereof shall be forever barred from asserting the same in any manner as entitled to preference.”
 

 What was intended by the Legislature in the use of the term “filed”?
 

 We are justified in presuming that the Legislature used the term in its generally accepted sense, and, thus employed, it implies actual rather than constructive delivery of the preference claim into the official custody and control of the Superintendent of Banks.
 

 The words “file” and “filed” have been variously defined.
 

 Webster’s New International Dictionary defines the word “file” thus: “To deliver (a. paper or instrument) to the proper officer so that it is received by him to be kept on file, or among the records of his-office.”
 

 Funk
 
 &
 
 Wagnall’s New Standard Dictionary thus: “To present in the regular way, as to a judicial or legislative body, so that it shall go upon the records or into the order of business; * * * to deposit in a court or public office, and pay the fees prescribed therefor, as a paper or document.”
 

 Bouvier’s Law Dictionary thus: “In the sense of a statute requiring the filing of a paper or document, it is filed when delivered to and received by the proper
 
 *498
 
 officer to be kept on file. Tbe word carries with it the idea of permanent preservation of the thing so delivered and received; that it may become a part of the public record.”
 

 United States
 
 v.
 
 Lombardo,
 
 241 U. S., 73, 76, 60 L. Ed., 897, 36 S. Ct., 508, thus: “A paper is filed when it is delivered to the proper official and by him received and filed.”
 

 City Street Improvement Co.
 
 v.
 
 Babcock,
 
 6 Cal. Unrep., 910, 913, 68 P., 548, thus: “In modern days it is usually held that a paper is filed on the part of the party who is required to file it when he has presented it at the proper office and left it with the person in charge thereof.”
 

 25 Corpus Juris, 1124, 1125, Section 4, thus: “The word ‘filed’ has a well defined meaning, signifying delivered to the proper officer and by him received to be kept on file; delivered into the actual custody of the officer designated by the statute, to be kept by him as a permanent record of his office.” And on page 1127: “Filing is not complete until the document is delivered and received.”
 

 Whether or not the preference claim of defendant in error may be said to have been “filed”, within the meaning and time contemplated and prescribed by Section 710-98®, G-eneral Code, is a question which must be answered by determining when the claim was actually delivered into the official custody and control of the Superintendent of Banks.
 

 It is conceded that at the expiration of the time limit prescribed by statute for filing of preference claims the claim of defendant in error was still in transit. Under the postal regulations then and now in full force and effect claimant had a right to regain possession of its mailed claim at any time prior to its actual delivery to the office of the Superintendent of Banks.
 

 
 *499
 
 Postal Laws and Begulations of 1932, Section 730, reads in part as follows:
 

 “730. When the sender of any article of unregistered mail matter desires its return after it has been dispatched from the mailing office application shall be made to the postmaster at the office of mailing, stating the reasons for such request. The matter shall be identified, the application accompanied with proper proof in writing, and a sum deposited with the postmaster sufficient to cover all expenses incurred.
 

 “2. When application has been made in due form for the recall of an article of mail matter the postmaster shall telegraph a request to the postmaster at the office of address, or to a railway postal clerk in whose custody the matter is known at the time to be, for the return of such matter to his office, carefully describing the same, so as to identify it and prevent the return of any other matter.
 

 “3. On receipt of a request for the return of any article of mail matter the postmaster or railway postal clerk to whom such request is addressed shall return such matter in a penalty envelope, to the mailing postmaster, who shall deliver it to the sender upon payment of all expenses and the regular rate of postage on the matter returned (except first-class matter, which is returned without additional charge for returning), and on the envelope or cover thereof postage-due stamps of the proper value shall be placed and canceled. (See sec. 765.) If the mail to which the application relates has been delivered, that fact shall be reported to the mailing postmaster who shall inform the sender.”
 

 The claimant, having had the right and power to recall its mailed claim while in transit, may be said to have been in control thereof to the exclusion of the Superintendent of Banks, which control was not lost until the claim was actually delivered into the official
 
 *500
 
 custody of the latter. The act of mailing was but the initial step taken in the process of transmission of the claim and did not constitute a “filing.” The date of mailing is therefore immaterial. The fact which is controlling is the time of actual delivery of the claim into the official custody and control of the Superintendent of Banks, for it was then that the claim was “filed.”
 

 It is conceded that the preference claim was delivered to the office of the Superintendent of Banks after the expiration of “three months after the last publication of notice.” It follows, therefore, that there was no filing in contemplation of Section 710-98», General Code, and that the Superintendent of Banks acquired no jurisdiction thereover.
 

 We hold that a claim for preference, properly addressed to the Superintendent of Banks, postage prepaid, and deposited in the mails on or before the last day provided by Section 710-98», General Code, for filing, and delivered to his official custody subsequent to the expiration of the prescribed time limit, has not been filed and does not give the Superintendent of Banks authority to consider it.
 

 The duties and powers of the Superintendent of Banks with respect to consideration of claims for preference are derived exclusively from and are limited by statute. Under Section 710-98», General Code, the Superintendent of Banks has no power and owes no duty to consider a claim filed after the expiration of the time limit prescribed therefor.
 

 In the case of
 
 Davis, Mayor,
 
 v.
 
 State, ex rel. Pecsok, ante,
 
 411, decided on February 19, 1936, this court held in paragraph one of the syllabus: “In proceedings in mandamus a court can not create a legal duty. The creation of a legal duty is a distinctive function of the legislative branch of government. The most that a court can do in mandamus is to command the
 
 *501
 
 performance of an act which the law specially enjoins as a duty resulting from an office, trust or station, when a clear right to such performance is presented.”
 

 No basis for a writ of mandamus exists.
 

 The judgment of the Court of Appeals is reversed and the judgment of the' Court of Common Pleas is affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Stephenson, Jones, Matthias and Zimmerman, JJ., concur.
 

 Williams, J., not participating.