DECISION
Relator, Consolidation Coal Company, commenced this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("the commission"), to vacate its order which granted permanent total disability compensation to respondent, Edmund Hickenbottom ("claimant"), and ordering the commission to deny claimant's application for such disability compensation.
Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In that decision, the magistrate concluded that the medical reports of Drs. Edwin Angulo and Thomas Lawson were properly considered by the commission and supported the commission's decision.
No objections have been filed to the magistrate's decision.
Finding no error of law or other defect on the face of the magistrate's decision, we adopt the decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ is denied.
Writ of mandamus denied.
BRYANT and DESHLER, JJ., concur.
 IN MANDAMUS
Relator, Consolidation Coal Company, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") compensation to respondent Edmund Hickenbottom ("claimant") and ordering the commission to deny claimant's application for PTD compensation. In the alternative, relator requests that the commission issue a new order, either granting or denying the requested compensation, after giving the evidence the proper consideration.
Findings of Fact:
1. Claimant sustained a work-related injury on September 25, 1986, and his claim has been allowed for: "Strain left groin; hernia; acute chondritis of the left pelvic tubercle and nerve entrapment neuropathy of the left groin."
2. On April 28, 2000, claimant filed his second application for PTD compensation. According to his application, claimant was seventy-four years old, has a high school education with some college courses pursued through the army, is able to read, write and perform basic math, has some special training, and has a work history that includes work as an unskilled laborer, fire boss, greaser-oiler and electronic assembler.
3. The record contains office notes from claimant's treating physician, Dr. Edwin B. Angulo. In those office notes, Dr. Angulo noted that claimant had limited weight bearing on his groin area and that claimant was trying to tighten his lower back to prevent pain in his groin area. He noted that claimant's problems were complicated by the fact that his abduction/adduction and flexion along his hip joint was limited and caused some contracture deformity whenever claimant attempted to walk or bend over. Dr. Angulo also noted left hip joint instability. On March 7, 2000, Dr. Angulo was asked to issue an opinion as to PTD. Dr. Angulo indicated that claimant was unable to engage in sustained remunerative employment, would not benefit from rehabilitation, or that claimant was limited by his injury to his groin which resulted from a current hernia of the inguinal region making him suffer from constant pain.
4. Claimant was also examined by Thomas Lawson, D.O., on behalf of the commission. Dr. Lawson noted that claimant ambulated into his office with a stiff tandem gait, had severe dysesthesia pain along the inguinal ilea, that claimant's range of motion in his hip was normal but markedly exacerbated the dysesthesia pain of the inguinal testicle region. Dr. Lawson opined claimant had reached maximum medical improvement and assessed a thirty-five percent permanent partial impairment. Dr. Lawson concluded as follows:
 * * * In my medical opinion, Mr. Hickenbottom is totally disabled. In my medical opinion, Mr. Hickenbottom will not be able to return to his former position of employment. I would like to make note that Mr. Hickenbottom has applied for and has been granted total disability by the social security disability system. I also would like to make note that the Independent Medical Exam by Dr. Gatens on 5-8-92 found Mr. Hickenbottom to be totally disabled.
Dr. Lawson completed an occupational activity assessment wherein he indicated that claimant was unrestricted in his ability to sit and could stand and walk for zero to three hours; could lift, carry, push, pull or otherwise move up to ten pounds for zero to three hours; could occasionally reach overhead, at waist, knee, and floor level; and was precluded from climbing stairs and ladders as well as using foot controls, crouching, stooping, bending, and kneeling.
5. In order to clear up a discrepancy in Dr. Lawson's report, the commission faxed him a letter asking him to indicate whether or not claimant could perform any sustained remunerative work activity. Dr. Lawson indicated that claimant could not. This letter is in the addendum to the stipulated record.[1] The copy is stamped CAI July 23, 2000 and includes the initials "CS." The quote "CS" indicates Carol Sheldon, a claims examiner III in the central office of the commission. Pursuant to her affidavit, she faxed the letter to Dr. Lawson asking him to clarify his prior report. Dr. Lawson's original report was not mailed to the parties until the supplemental report was received. When she received the supplemental report, she stamped it with the "CAI" indicating the commission's medical section, placed her initials on it, and mailed copies of Dr. Lawson's original report and the supplemental report to the parties.
6. Claimant's application was heard before a staff hearing officer ("SHO") on January 9, 2001, and resulted in an order granting him PTD compensation based upon the reports of Drs. Angulo and Lawson. PTD compensation was awarded from March 27, 2000, the date of Dr. Angulo's report. Because the commission based its decision solely on the medical conditions, the commission did not address the vocational disability factors.
7. Relator's request for reconsideration was denied by order of the commission mailed January 30, 2001.
8. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
Relator contends that the reports of Drs. Angulo and Lawson cannot constitute some evidence upon which the commission could rely in granting claimant PTD compensation. Specifically, relator contends that, although Dr. Angulo's report does indicate that claimant is not able to engage in sustained remunerative employment, Dr. Angulo made no finding as to claimant's loss of function due to the allowed injury and his medical impairment arising therefrom. Relator contends that Dr. Lawson's report does not indicate that claimant is unable to engage in sustained remunerative employment and further that the commission could not rely on Dr. Lawson's supplemental report as such report was not date stamped filed of record with the commission prior to the PTD hearing. For the reasons that follow, this magistrate disagrees.
In his March 27, 2000 report wherein Dr. Angulo indicated that claimant was unable to engage in sustained remunerative employment, Dr. Angulo specifically referenced his prior reports already on file with the commission. Several reports of Dr. Angulo are in the record which discuss, in detail, Dr. Angulo's physical findings and his conclusions. Specifically, in his March 25, 1999 report, Dr. Angulo indicated that claimant has limited weight bearing, that he tries to tighten the muscles in his lower back to restrict any movement or aggravation of pain in the area of the hernia. He noted further that claimant's abduction/adduction as well as his flexion along the hip joint is limited and has caused some degree of contracture deformity whenever claimant tries to walk or bend over. In his progress note dated November 29, 1999, Dr. Angulo noted that claimant continues to be bothered by pain in the lower back and groin area. When he tries to bend over, he gets a charley horse and feels nauseated. Clearly, Dr. Angulo has provided evidence of claimant's impairments. Dr. Angulo's March 27, 2000 report was generated as a result of his completing a form asking him to answer questions whether claimant was entitled to PTD compensation. Question number seven specifically asked Dr. Angulo to opine as to whether claimant was able to engage in sustained remunerative employment. Dr. Angulo indicated that claimant could not and gave his reasons for that which included relator's constant pain. Although relator is correct to assert that doctors must confine their opinions to the question of medical impairment, see State ex rel. Woods v. Indus. Comm (1990), 50 Ohio St.3d 227, Dr. Angulo did provide evidence as to claimant's impairment. As such, this argument fails.
Relator also contends that the report of Dr. Lawson cannot constitute some evidence upon which the commission could rely, and argues that Dr. Lawson's addendum could not be relied upon by the commission as it was not properly date stamped filed. First, concerning the addendum, it is this magistrate's decision that the commission could consider that report. In the present case, Dr. Lawson was asked to issue an addendum report on the issue of whether relator could perform any sustained remunerative work activity. It is undisputed that this form was faxed to Dr. Lawson and that he faxed it back to the commission. It is also undisputed that the commission received the fax and forwarded copies of Dr. Lawson's addendum report to the parties, including relator. The issue involved herein is whether the commission could properly consider that addendum report when the commission failed to date stamp file it before it was placed in the record.
In Wagner v. Fulton Industries (Feb. 7, 1997), Fulton App. No. 95CV-186, unreported, the Fulton County Court of Appeals recently considered a similar case. The case involved a faxed notice of appeal which arrived timely but was not date stamped and filed until much later. The court stated as follows:
 It is long been held that, "[w]hen a paper is in good faith delivered to the proper officer to be filed, and by him received to be kept in its proper place in his office, it is `filed.' The endorsement upon it by such officer of the fact and date of filing is but evidence of such filing." King v. Penn (1985), 43 Ohio St. 57, paragraph four of the syllabus; accord, Ferrebee v. Boggs (1969), 18 Ohio St.2d 87, 88; Fulton v. State ex rel General Motors (1936), 130 Ohio St. 494, 498; compare Duffy v. Hamilton Co. Commissioners (1994), 92 Ohio App.3d 717, 720-721. In view of this definition, it seems clear that while the presence of an agency "time stamp" or "file stamp" would be evidence that a document was filed, the absence of such a stamp creates only a presumption that the document was not timely filed. As with any presumption, this conclusion may be dispelled by sufficient evidence.
In the present case, the affidavit of Carol Shelton, a claims examiner III in the commission's medical review section indicates that the faxed addendum from Dr. Lawson was received, copied, and was sent to the parties. Relator does not contend that it did not receive a copy of this addendum nor does relator contend that the addendum was not part of the documents in front of the hearing officer. Instead, relator contends that the addendum cannot be considered merely because it did not have the date stamp filed on it. As the court found in Wagner, while the presence of an agency date stamp is evidence that the document was filed, the absence of such a stamp creates only a presumption that a document was not timely filed. As with any presumption, this conclusion may be dispelled by sufficient evidence. This magistrate specifically finds that the affidavit of Carol Shelton overcomes that presumption especially since relator does not deny that it received the addendum and does not deny that the addendum was actually in the record before the hearing officer. As such, this argument fails as well.
Turning to a review of Dr. Lawson's report as a whole, this magistrate notes that Dr. Lawson did make findings as to claimant's physical limitations and ultimately concluded that he was not able to engage in sustained remunerative employment. As such, this argument of relator fails as well.
Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in relying upon the reports of Drs. Angulo and Lawson and ultimately concludes that claimant was entitled to receive PTD compensation. As such, this court should deny relator's request for a writ of mandamus.
[1] Relator contends that this addendum cannot constitute some evidence upon which the commission could rely in granting claimant's application for PTD compensation because it lacks the timestamp of the commission.